**KISSINGER N. SIBANDA Esq, Attorney at Law,** *Pro Se*

The Law Office of Kissinger N. Sibanda, PLLC

PO Box 714. Livingston. NJ 07039

Kissinger N. Sibanda, Atty. ID #1017426

ksibanda@temple.edu

Telephone: 862-250-9684

*Attorney for Plaintiff.*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

KISSINGER N. SIBANDA

　　　　　*Plaintiff,*

　　　　　　　v.

DAVID ELLISON, WILL SMITH,

SKYDANCE PRODUCTIONS, LLC; a

California Limited Company, GEMINI

PICTURES, LLC, a California Limited

Liability Company, SKYDANCE

DEVELOPMENT, LLC, a California Limited

Liability Company, ASHLEE LIN,

PARAMOUNT PICTURES, FOSUN

PICTURES INC.

　　　　　*Defendants.*

**Case No: 1:24-cv-06310_**

DEMAND FOR JURY TRIAL

1. 17 U.S.C. §§ 101 et seq.,

2. Conspiracy to Deprive Copyright

3. Unjust Enrichment

4. Contributory Copyright Infringement

- 1 -

COMPLAINT FOR COPYRIGHT INFRINGEMENT.

1. Plaintiff Kissinger N. Sibanda is an American/South African national – an attorney, legal scholar, and science fiction writer (*herein*, Plaintiff). And the author of the science fiction novel "The Return to Gibraltar," "hereinafter, the book." This is a copyright lawsuit between the book published in 2011, and the <u>final</u> released film, "Gemini Man" released in 2019[1]. Proof of registered copyright is filed under seal to the court as Exhibit: <u>11</u>. Plaintiff, Dr. Sibanda, hereby alleges as follows:

**Valid Copyright Holder**

2. Plaintiff has a valid copyright registered with the U.S Copyright office dated September 25th, 2023. Exhibit:11 (Underseal). Moreover, this copyright claim was permitted for *refiling* by Order dated August 14th, 2024. See, *Sibanda v. Ellison*, 1-22-cv-05752 (JMF). ECF: 131, Order, "Op" at fn. 6. (*herein after*, Skydance II)[2]. Plaintiff published his book on August of 2011, and placed it on Amazon.com, as well as bn.com., soon after.

3. Plaintiff is the writer of "The Return To Gibraltar": an original work of fiction.

4. This Circuit has held that Section 411 of the "Copyright Act "as an exhaustive claims processing clause and not jurisdictional. *Id.*

---

[1] It is not a lawsuit between any screenplay previously written by defendants, but the final marketed film starring Will Smith with all its themes, plots and sub-texts, as presented on the screen. Accordingly, the publication of "The Return To Gibraltar," precedes the movie "Gemini Man's" entry into the public market by close to <u>eight years</u>.
[2] Plaintiff has all the rights and privileges to assert all claims, not addressed and <u>not dismissed with prejudice</u>, in any prior matter between parties, under the First Amendment's right to access the courts (remedial interpretation from text). Any preemptive order, of unadjudicated claims, would amount to impermissible hindrance to plaintiff's right to address injury. *Ubi jus ibi remedium*: where there is a right there is a remedy.

COMPLAINT FOR COPYRIGHT INFRINGEMENT.

**Continuing Copyright Violation By Production[3] and Distribution Defendants[4]:**

5. Injury to plaintiff is ongoing under the continuous tort doctrine. As of August 17th, 2024, defendants were still marketing and selling Gemini Man, with no regard for their copyright infringement. Exhibit: 1.

6. During the pendency of this dispute, from August 2020 to the date of filing this action August 21, 2024, defendants have not ceased marketing and selling "Gemini Man" to the public, as their intellectual property.

7. Benefitting financially from having stolen plaintiff's work, including in this state New York, through sales and streaming of "Gemini Man," "*herein*, the film." The film is streaming on many streaming channels, including Apple TV and Netflix and is sold into the New York market by Paramount Pictures as a DVD and Blue Ray. The Exhibit: 1. The film continues to receive residual income without acknowledging plaintiff's contribution to its success by any of the producers or its lead actor, Will Smith, whose involvement was key to giving Gemini Man's its limited success. This

---

[3] Production defendants refer to David Ellison, Skydance Productions LLC, Skydance Development LLC, Gemini Pictures LLC, and Fosun Pictures Inc.
[4] Distribution defendant(s) refers to Paramount Pictures.

- 3 -

theft also limits the book's own market value[5] for its planned adaptation as a motion picture in due course [6].

8. Producers of "Gemini Man," refuse to acknowledge plaintiff's work in their stolen material and undermine the market originality of any adaptation of plaintiff's copyrighted work – <u>The Return to Gibraltar</u>. Defendants have refused all efforts to resolve this matter privately and prefer litigation, as communicated by Ashlee Lin, during the pendency of the *Skydance II* matter.

## NATURE OF THE ACTION

9. This is an action for federal copyright infringement of plaintiff's copyright asserted by Plaintiff against Defendants pursuant to the copyright laws of the United States, 17 U.S.C. §§ 101 *et seq*, and for such other relief as the Court deems just and proper. Plaintiff has a registered copyright for the work, "The Return to Gibraltar." Exhibit. <u>3-5</u>. This work has a valid registered copyright, as a foreign work, by the U.S. Copyright Office. *Id.*

---

[5] The issue of copyright infringement should be settled squarely by tis court because the public will question why, The Return to Gibraltar, has themes, plots and pacing, substantially like the movie "Gemini Man," when it enters the public market as a motion picture. More concerning, is the argument by defendant that such similarity does not infringe their movie, having not read the book during the pendency of the first Central District matter, *Skydance I*. Exhibit: 7.

[6] IMDB page – The Return to Gibraltar: https://www.imdb.com/title/tt3890406/?ref_=nm_knf_t_3

10. This complaint was permitted under *Kissinger N. Sibanda v. Ellison*, *et al*, 1:22-cv-05752 -JMF, ECF: <u>131</u>, stating:

That said, dismissal of the copyright infringement claim is without prejudice to the filing of a new action. See *Malibu Media*, 2019 WL 1454317, at *4. But "any newly filed action will not relate back to the filing of the original Complaint in this action."

*Id at fn 7.*

In light of the foregoing, the Court need not and does not reach Defendants' argument that Sibanda's second claim fails due to the litigation privilege. See ECF No. 95 ("Lin MTD Mem."), at 5-7; Skydance Defs.' MTD Mem. 7-8.

*Id. at fn 6.*

The Skydance Defendants assert that the copyright registration requirement is jurisdictional, *see* ECF No. 98 ("Skydance Defs.' MTD Mem."), at 6, **but that is incorrect**, *see Malibu Media*, 2019 WL 1454317, at *2.

*(emphasis added)*

*Id at fn.2*

## PARTIES

11. Plaintiff is an individual residing and domiciled in New Jersey. He is a licensed attorney and writer; and holds a PhD in Law (SJD) from Suffolk School of Law from Boston Massachusetts. Plaintiff is the owner of all copyright(s) in the book Return to Gibraltar (the "Book") and resides in New Jersey, reasonably close to this District where defendants execute an inordinate amount of business.

12. Defendant David Ellison produced "Gemini Man," and is CEO of all Skydance properties including Skydance Productions LLC, Skydance Development LLC,

- 5 -

Gemini Pictures LLC and Skydance Media LLC; co-owners of the underlying "Gemini Man," copyright.

13. Defendants DAVID ELLISON (CEO), in his official capacity; SKYDANCE PRODUCTIONS, LLC, a California Limited Liability Company and GEMINI PICTURES, LLC, a California Limited Liability Company, produced and marketed "Gemini Man."

14. Defendant Ashely Lin is an attorney licensed in California. She filed the initial action seeking a declaratory judgment in the wrong forum, in the Central District of California matter (Herein, *Skydance I*).

15. All defendants market their films and conduct business in this District making millions from targeting this District. Specific personal jurisdiction and long arm jurisdiction is proper under *World-Wide Volkswagen Corp v. Woodson*, 444 U.S. 286 (1980) because the revenue is extensive and defendants have continuous and formal business ties with this District, now and in the future. Defendants screened "Gemini Men[7]," in New York from October 2019 to early 2020; injury has occurred in this district because of the screening.

16. Furthermore, upon information and belief, Defendant Skydance Productions, LLC is a California limited liability company with its principal place of business in Santa Monica, California. It is a co-owner of the "Gemini Man" copyright.

---

[7]  The film received generally negative reviews.

COMPLAINT FOR COPYRIGHT INFRINGEMENT.

17. Defendant Gemini Pictures, LLC is a California limited liability company with its principal place of business in Santa Monica, California but conducts substantial business in New York. Specifically, all defendants produced and marketed "Gemini Men" into this District and into the channels of commerce in New York despite being incorporated in Santa Monica. Defendants also conduct substantial business in New York through marketing and selling other goods (films) into this District. Thus, Defendants have entered their goods in general and specifically the film, "Gemini Men," into the stream of commerce in New York and into this District specifically, subjecting them to specific personal jurisdiction. It is a co-owner of the "Gemini Man" copyright.

18. Skydance Development LLC, is the co-owner of the copyright for "Gemini Man." Their principal place of business is in Santa Monica, California but conducts substantial business in New York. Specifically, all defendants produced and marketed "Gemini Men" into this District and into the channels of commerce in New York despite being incorporated in Santa Monica. Defendants also conduct substantial business in New York through marketing and selling other goods (films) into this District. Thus, Defendants have entered their goods in general and specifically the film, "Gemini Men," into the stream of commerce in New York and into this District specifically, subjecting them to specific personal jurisdiction. It is a co-owner of the "Gemini Man" copyright.

19. Skydance Productions LLC has its principal place of business in Santa Monica, California but conducts substantial business in New York. Specifically, all defendants

- 7 -

produced and marketed "Gemini Man" into this District and into the channels of commerce in New York despite being incorporated in Santa Monica. Defendants also conduct substantial business in New York through marketing and selling other goods (films) into this District. Thus, Defendants have entered their goods in general and specifically the film, "Gemini Man," into the stream of commerce in New York and into this District specifically, subjecting them to specific personal jurisdiction.

20. Fosun Pictures Inc, a Chinese cooperation, financed "Gemini Man," under an underlying contract that production defendants (Skydance Productions LL, Skydance Development LLC and Gemini Pictures LLC) have with defendant.

21. Paramount Pictures, is a U.S. film distributor that distributes, "Gemini Man." They distribute their catalogue of films into the channels of commerce, including New York. In July of 2024, Skydance bought Paramount Pictures,

**JURISDICTION AND VENUE**

22. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, and 1338 (original federal jurisdiction) because there is federal jurisdiction based on 17 U.S.C §§ 101 et seq. The other state claims are supplemental to this jurisdiction for reasons of economy, nexus of facts and claims processing.

23. Venue is proper in this judicial district pursuant to 28 U.S.C. §§1391 and 1400 because.

24. The Court has personal jurisdiction over Defendants. Defendants have conducted business in and directed to New York, including by making "Gemini Man," available

- 8 -

for sale in New York. *World-Wide Volkswagen Corp v. Woodson*, 444 U.S. 286

(1980). Furthermore, pursuant to 28 U.S.C 1391 a (2):

the proper venue for a civil action shall be determined without regard to whether the action is local or transitory in nature.

## FACTUAL BACKGROUND

### (a) Facts alleging Copyright Infringement

25. Plaintiff, Kissinger N. Sibanda wrote and published his book the "Return to

Gibraltar" in August 11, 2011. The book details an African American who is cloned

and used in a time travelling program without his permission. In marketing the book,

plaintiff Sibanda asserted that it would be a good fit for Will Smith as the lead.

Exhibit: 5.

26. In 2019, Defendants released the Picture, Gemini Man, directed by Ang Lee and

starring Will Smith, Mary Elizabeth Winstead, Clive Owen, and Benedict Wong. The

Picture follows a former hitman who is targeted by a younger clone of himself while

on the run from the government. The defendants struggled to make the movie until

plaintiff released his book in 2011, thereafter they changed the film's marketing

strategy - taking themes, plots, characterizations, context and cultural subtexts from

the book to create their movie, "Gemini Men."  Despite this, the motion picture is

COMPLAINT FOR COPYRIGHT INFRINGEMENT.

regarded as a flop because the script is not well integrated[8]. And despite signing Will

Smith as the lead[9].

27. While signing Will Smith as the lead in "Gemini Man," is not conclusive of copyright

theft; it's the transformation of the Caucasian lead into a black lead based on The

Return to Gibraltar's cultural ethos and context as a model, that points to copyright

infringement based on exposure to the book; especially when such use and similarity

to the book is uncredited or given due recognition. Gemini Man, as a movie, is simply

put, strikingly and substantially like "Return to Gibraltar[10]."  When one places the

two works side by side, they would reach the conclusion that it came from the same

creative pen – especially, the core elements.

28. Defendants struggled to make "Gemini Man" is noted as follows: The Screenplay was

acquired by Walt Disney Pictures in 1997 and then by defendants in 2016.,

throughout this development, production defendants were unable to produce their

film. Production defendants initially cast Clint Eastwood, a white actor for the role

but that changed when "The return to Gibraltar," was published. Insert: Exhibit: 3.

There after the lead character in "Gemini Man," **H**enry **B**rogan became black, like the

---

[8] Maher, Kevin (October 11, 2019). "Gemini Man review — someone order a hit on the shaky cameras and bad script". The Times. ISSN 0140-0460. https://www.thetimes.co.uk/article/gemini-man-review-someone-order-a-hit-on-the-shaky-cameras-and-bad-script-c2cf9ndjk Retrieved July 4th, 2023.

[9] Defendants filed for declaratory judgment in California, in a favorable forum with favorable precedent (*Cadkin v. Loose*); a type of forum shopping – seeking to have the two creative products- the Picture and the Book "declared as independent works which do not infringe each other; a defensive tactic. That attempt at declaratory judgment failed. However, for close to three years this matter has been in the wrong forum because defendants filed a request for declaratory judgment in the wrong forum. *See*, *Skydance Development et al v. Kissinger Sibanda* (Central District of California) (2:20-cv-08145 – CBM-JC). This was abuse of process and a conspiracy to deprive plaintiff of their legal copyright. It is discussed further in the second cause of action *infra*.

[10] As an example, when the "Terminator," movie starring Arnold Schwarzenegger was made, appropriate credit is given to Harlan Ellison for the similarities of his books with the final "Terminator" movie. Unfortunately, this was done only after Ellison filed suit and fought for such recognition.

COMPLAINT FOR COPYRIGHT INFRINGEMENT.

protagonist in "The Return to Gibraltar," **H**orace **B**ates. The similar initials of the

protagonists, **HB**, in the two works of art is also worth noting[11].



29. The publication of "The Return to Gibraltar," provided a fee meal for the defendants;

not only did the book detail the cultural importance of the protagonist as a black

person in a cinematic form (Exhibit: 3 and 5), but it explained cloning and its science

in the context of a complete story; not just "ideas and facts" but a complete narrative

pace and climax. In addition to the literary tool of deception in a cloned army used

against the protagonist. Interesting enough, the protagonist in "The Return to

---

[11]  Coincidentally, plaintiff's name is Kissinger N. Sibanda, and a nickname among friends is "Henry." As in "Henry Kissinger." Very few black people are named "Henry," but alas, the lead in "Gemini Man, was a black man called "Henry Bogart? This is further circumstantial proof of exposure to plaintiff's work.

COMPLAINT FOR COPYRIGHT INFRINGEMENT.

Gibraltar" is a Harvard man, similarly to the younger version of the Will Smith cloned in "Gemini Man."

30. Such narrative elements lifted from the book provided the hook in rescripting defendants unproduced and unproductive script which they struggled to produce for many years before the book was published. Insert: Exhibit: <u>4</u>. Most prominent of the copyright infringement was the stealing of the textual context of cloning the lead Henry Brogan character played by Will Smith into an army without his permission and used as a clandestine military unit: this is exactly what happens to the protagonist in "The Return to Gibraltar," – Horace Arthur Bates, whose DNA is used to clone a whole army of time travellers. (The process, context and manner of cloning was copied.) *See also*, *Baker v. Selden*, 101 U.S. 99 (1879); stating that description of processes can be copyrighted. Furthermore, author Kissinger N. Sibanda, reiterated that the lead for any adaptation of "The Return to Gibraltar," into a film would be perfect for Will Smith. Exhibit: 5 (*From Qunu to Big Apple*).

COMPLAINT FOR COPYRIGHT INFRINGEMENT.

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15  31. On August 21, August 30, and September 1, 2020, Plaintiff sent emails to counsel for

16      defendants asserting copyright infringement of the Book. Defendants' copyright

17      infringement, unjust enrichment and contributory copyright infringement is on-going,

18      unremorseful, deliberate and manipulative of court proceedings to confound

19      plaintiff's underlying right to sue for copyright infringement. To date defendants have

20      not offered any monetary settlement to plaintiff, only a zero-dollar walk away. This is

21      the confidence with which the underlying copyright infringement is supported.

22  32. Defendants thereafter filed a complaint for declaratory judgment in the Central

23      District of California against plaintiff, despite knowing that plaintiff is domiciled in

24      New Jersey. Ultimately defendants voluntarily dismissed their case against plaintiff.

25      The issue of attorney fees triggered by filing the action in the wrong district was

26
27
28

- 13 -

appealed in the Ninth Circuit but surprisingly affirmed. The California Forum refused

to penalize its citizens for abuse of process and the copyright laws by forum shopping

with the intension to render the statute of limitations for plaintiff's copyright

infringement time-barred by filing in the wrong forum.

*33.* Plaintiff believes firmly that defendants' initial court action against plaintiff filed in

Central California, the wrong forum, was deliberately intended not to adjudicate the

underlying controversy but to waste-away the three-year statute of limitations on a

copyright action in the wrong forum. A clever litigation tactic, which takes away

from copyright holders their right to litigate controversies to a finality in the correct

forum. A blueprint for other forum shoppers to do the same – file in the wrong forum

and exhaust plaintiff's claim.

**Contact With Defendants Regrading Copyrighted Material**

34. On or around early 2012, plaintiff shared with Will Smith's then stunt double at the

time the book, its contents and they had a discussion regarding South Africa and Cape

town. Plaintiff does not recall the actual name of the stunt double, but it was

regarding possibly playing Hannibal Barca in plaintiff's work in development –

"Hannibal the Great." The stunt double had recently returned from Cape Town, South

Africa and limited discovery can produce the name given that defendants have all the

names of Will Smith's stunt doubles on file.

35. In addition, on August 2013, after extensive clearance and approval, plaintiff mailed

William Morris Endeavor (WME), to the attention of Dick Wolf, a   copy of the book

for possible development into a T.V. series entitled "D:SI," a television adoption of

- 14 -

COMPLAINT FOR COPYRIGHT INFRINGEMENT.

the "Return to Gibraltar." Exhibit: <u>6</u> (The Release). Defendants CEO, David Ellison shares the same legal representative (Ziffren Brittenham) with Dick Wolf. The two (Dick Wolf and David Ellison) know each other through David Ellison's father – Larry Ellison) and have a working relationship.

36. The two instances; Will smith's stunt double and WME submission, are proof of contact with plaintiff's copyrighted material. Notwithstanding that the book was available for publication and purchase after August 2011 on Amazon and other outlets. These contact examples are not exhaustive because discovery has not occurred, but it is cited here as examples of known contact and provable contact and to demonstrate to the tribunal that this action is meritorious and not subjective and satisfies Federal Rule of Civil Procedure Rule <u>8</u>, on notice pleading regarding copyright infringement – contact and infringement.

37. Plaintiff also submits the book, "The Return to Gibraltar," and the film, "Gemini Man," as physical exhibits attached to this complaint, Exhibits: <u>7</u> and <u>8</u> respectfully by inference, as if physically submitted – due to the cost of mailing the exhibits.

<strong>Legal Standard</strong>

38. Plaintiff, Kissinger N. Sibanda satisfies the legal requirements for copyright infringement under 17 U.S.C. § 106, because he <u>holds</u> a valid copyright in a published work, "The Return to Gibraltar." The first requirement. The infringement has <u>occurred by producing</u> a different creative work with striking and substantial

- 15 -

similarities[12] to Sibanda's copyright in defendants' film, "Gemini Man," without

Sibanda's acknowledgement, compensation or permission. The second requirement.

Not merely the ideas and facts are substantially similar i.e., cloning, military abuse of

cloning – but the *process* by which it is done to a black lead within the context of a plot,

theme, and context – a copyrighted process has been stolen. In addition to the cinematic

marketing hooks to the story to generate maximum market revenue by casting will Smith

as the lead.

### AS FOR FIRST CAUSE OF ACTION
17 U.S.C. §§ 101 et seq
(To all defendants, excluding Will Smith, Paramount Pictures and Ashlee Lin)

39. Plaintiff repeats and realleges the allegations in paragraph 1 through 38 as if fully set

forth herein. Defendants' Motion Picture, Gemini Man, infringes a valid and

enforceable copyright in the Book, "The Return to Gibraltar," because it stole themes,

plots, characters, context and subtext from the Book without proper authorization or

permission in violation of plaintiff's copyright pursuant to 17 U.S.C. §§ 101 et seq.

This stolen narrative/process as described in the book, was not limited to mere merely

facts and ideas but the actual three-plot narrative for a complete story, how the lead

character evolves from his naivety to discovering he was in fact cloned. An analogy is

"Julius Caesar" by William Shakespeare: one has to see a representation of the play to

understand when plagiarism has occurred, not merely the fact that the play deals with

---

[12] This strikingly similarities and substantial likeness between "The Return to Gibraltar," and "Gemini MaPn," are triable facts and protected by law under 17 U.S.C. §§ 106 and 106 A.

- 16 -

Caesar. The adaptation of Shakespeare's Julius Caesar to modern settings, slight

changes in costume, the race of characters playing Caesar – does not change the fact

that it is the original work of William Shakespeare, when the narrative story, pace,

language, themes and plot is factored in, thus any adaptation must still reflect

appropriate accreditation[13].

40. Furthermore, plaintiff has a valid, legal, and legitimate copyright in "The Return to

Gibraltar," which defendants do not dispute, register in 2011 and made public in

August of 2011.  Exhibit: 6. (Library of congress record.)

---

[13] Plaintiff does not argue that the whole of "Gemini Men" is an adaptation of "The Return to Gibraltar," but that the heart of Gemini Men was stolen from "The Return To Gibraltar," in a failed bid to resuscitate a sinking ship – the picture. It is accepted that one does not need to steal the whole song to violate the copyright of the original song; a verse, rhythm or a chorus is sufficient. *Williams v. Gaye*, No. 15-56880 (9th Cir. 2018) – The Blurred Lines case. When Alex Hailey was sued for copyright infringement for "Roots," it boiled down to minute but strikingly similar passages in  Hailey's book with the work of Harold Courlander's "The African;" specifically the language describing Kunta Kinte's abduction while looking for a tree trunk to make a drum, and the use of the calling  "'Yoo-hooo-ah-hoo'" first used by Harold Coulander in "the African." *See also*, Lee Lazare, "Bethesda Author Settles for $500,000." https://www.washingtonpost.com/archive/politics/1978/12/15/bethesda-author-settles-roots-suit-for-500000/f97b693c-5336-46b3-8ab0-1b19856e8964/ Retrieved July 3rd, 2023:

"Haley testified last month that although he had not read "The African" before writing "Roots," three brief passages from Courlander's work had been inadvertently incorporated in Haley's work.

From "The African": . . . but the hunter is not allowed to fortet. All his senses must be burning. He must hear what the farmer cannot hear. He must smell what others cannot smell . . . his eyes must pierce the darkness."

From "Rotts": " . . . The hunter's senses must be fine. He must hear what others cannot, smell what others cannot. He must see through the darkness."

From "The African": " . . . drifted into sleep . . . Hwesuhunu drifted into wakefulness again. He felt his father's presence in the darkness. He reached out his hand, but there was nothing there to be felt. He spoke aloud, saying, 'So it shall be, I understand. This is the meaning of things.'"

From "Roots": "One night when Kunte had fallen asleep but drifted again into wakefulness . . . he lay staring up into the darkness . . . feeling around him, in some strange way, the presence of his holy-man grandfather, Kunte reached out in the darkness. There was nothing to be felt, but he began speaking aloud to the Alquaran Kairaba Kinta Kunte, imploring him to make know the purpose his mission here . . . "

- 17 -

41. Defendants under the "heart of the book," doctrine, *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539 (1985); stole key copyrighted narratives: plots, characterizations, and scientific backstory and techniques (defamiliarization, romantic protagonist and sympathy) from "The Return to Gibraltar," to resuscitate a failed cinematic production with a white lead, thus creating a feature film using "The Return to Gibraltar," as an uncredited reference and prototype with a successful *black* protagonist – played by Will Smith having been exposed to "The Return to Gibraltar." *See specifically*, Exhibit: **5**. (Article – *From Qunu to Big Apple*.)

Pursuant to the *Harper Court* decision, copyright infringement occurs under the heart-of-the-book doctrine when:

"…the excerpts constituted a quantitatively insubstantial portion of the memoirs, they represented "the heart of the book" and were qualitatively substantial in view of their expressive value and their key role in the infringing work. Finally, noting that the effect of the use upon the potential market for the copyrighted work was the "single most important element of fair use," the Court found that the defendant's use "directly competed for a share of the market" and presented "clear-cut evidence of actual damage." *Id.*

42. In addition, defendants have deliberately reduced the <u>market value</u> of "The Return to Gibraltar," and its subsidiary rights (film) by stealing the originality of the concept, plot lines, characterizations and science-fiction hook and introducing the public to the book's "heart." This has watered down the book's market value and subsequent subsidiary film rights for any feature film – a motive of the defendants.

43. Defendants continue to reap from plaintiff's handwork without acknowledgement or renumeration for the benefit and plaintiff's foundational handwork and importance of the copyrighted material in the development of their film – Gemini Man.

- 18 -

**AS FOR SECOND CAUSE OF ACTION**
(To all defendants)
(Excluding Will Smith and Paramount Pictures)
Civil Conspiracy to Deprive Legal Right

44. Plaintiff repeats and realleges the allegations in paragraph 1 through 43 as if fully set

forth herein. From the onset, plaintiff states that the tort to deprive an individual from

excising a legal right, a plot or plan, so done, is a tortious action, separate from the

statutory copyright infringement, stated in the first course of action.

Specific Facts:

45. Defendants (excluding Will Smith and Paramount Pictures) jointly embarked on a

scheme to file a declaratory judgment, in the wrong forum, California Central

District, for purposes of depriving plaintiff of his protected legal remedy under 17

U.S.C. §§ 106 and 106 A., in the correct forum. Despite defendants being told as soon

as the lawsuit was filed that plaintiff did not reside in California, defendants

continued to exert a concerted effort to file in the wrong forum for purposes of using

favourable caselaw (*Cadkin v. Loose*) offensively against plaintiff.

46. Defendants plot is shown through circumstantial evidence, while defendants knew

that plaintiff is resident in New Jersey and could have transferred their action to this

court – defendants refused.

47. Defendants then voluntarily dismissed their case against plaintiff under Federal Rule

of Civil Procedure 41 (a), without a memorandum of law and late into the proceedings.

Central District of California, Exhibit:  1.

48. Plaintiff alleges that aforementioned defendants plotted to deliberately file a lawsuit

for abuse of process and not to address any underlying copyright infringement: this is

- 19 -

moreso evidenced by defendants' unwillingness to read the book, when the copyright infringement was first noticed to them. Exhibit: 1. This is an admitted fact in the exchange between parties undermining the merit of their litigation plains in the first Central District – it is fact specific and warrants further discovery or limited discovery on the issue; *defendants' admitted failure to read the book but initiating proceedings*.

49. In the Initial action, *Skydance Development et al v. Kissinger Sibanda*, 18-cv-0845, filed September 20th, 2020: Sibanda filed his motion to dismiss the action on December 29th, 2020. Defendants then filed their voluntary dismissal notice on July 7th, 2021, after taking limited discovery on the issue (plaintiff's specific jurisdiction) and failing to brief their supplemental brief on the issue. Defendants requested three extensions to file a supplemental brief on Sibanda's personal jurisdiction but ultimately abandoned that purported supplemental. *Id*. *See also*, Exhibit: **F** (mandate of District Court).

50. Thus, defendants, in the Central District matter, found a favourable forum in which to harass plaintiff, and which does not respect the federal rules of civil procedure as legislated by congress. The deliberate misfiling of a lawsuit, here *Skydance Development LLC et al v. Kissinger Sibanda*, 2:20-cv-01845, in the Central District of California, and then dismissing it, under Rule FRCP Rule 41.a, for purposes of undermining the Copyright Act violates plaintiff's right pursuant to 18 U.S.C. § 241, constitutes a separate cause of action. It was an attempt by defendants to deprive plaintiff of his copyright in a favourable forum, regardless of the issues and facts surrounding plaintiff's actual domicile. Exhibit: **7** (letter o Ashlee Lin). An abuse of the declaratory judgment act, Declaratory Judgment Act (DJA), 28 U.S.C. §§ 2201–02; specifically stating that the Act was not legislated for fencing of claims; *Wilton*

*v. Seven Falls:* The "distinctive feature" that the Court highlighted is the "unique and substantial discretion," which the DJA grants the federal courts. *Wilton*, 515 U.S. at 286. The Supreme Court summarized the general policy underlying *Wilton* as follows: "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288. In so holding, the Court reinforced the two policy preferences that motivated the district court in the case: avoidance of piecemeal litigation and prevention of forum shopping. *Id*. at 280.

51. Production defendants' writers, even though claiming to be the original writers of "Gemini Man," did not join the initial action for declaratory judgment commenced in the Central District of California.

### THIRD CAUSE OF ACTION
### UNJUST ENRICHMENT
### ( Quasi contact[14] or implied by law)
(To all parties (production and distribution), but excluding Ashely Lin.)

<u>Specific Facts:</u>

52. Plaintiff repeats and realleges the allegations in paragraph 1 through 51 as if fully set forth herein. Plaintiff alleges, excluding Ashlee Lin, have benefitted financially by not giving credit to the work "The return To Gibraltar," outside of the underlying copyright infringement in the context of their contracts.

---

[14] "The quasi-contract, is not really a contract, but a legal obligation closely akin to a duty to make restitution." *Bloomgarden v. Coyer*, 479 F.2d 201, 210 (D.C. Cir. 1973).

53. "Generally, in order to recover on a quasi-contractual claim, the plaintiff must show that the defendant was unjustly enriched at the plaintiff's expense, and that the circumstances were such that in good conscience the defendant should make restitution"  *Chase Manhattan Bank v. Banque Intra, S.A.*, 274 F. Supp. 496, 499 (S.D.N.Y. 1967)" *Bloomgarden v. Coyer*, 479 F.2d 201, 211 n.55 (D.C. Cir. 1973)

54. Named parties have contracts, for distribution and renumeration, in which they benefit from "Gemini Man," and state in those contracts that their film is as an original work, not infringing on any one's copyright.

55. Production parties' further states in their contracts that all creative elements have been compensated or credited.

56. Parties, Skydance Development LLC, Skydance Productions LL, Gemini Pictures LLC and Fosun, (herein production parties) have a contract to benefit from "Gemini Man," its residual sales, DVD and blue ray sales, streaming and any sequel.

57. Said Production parties have a contract with Paramount Pictures as a distributor[15], based on the false that "Gemini Man," is original.

58. Defendants have benefitted to date from these underlying, and unlawful contracts, because Gemini Man, is not original, but an expensive reap-off of "The Return to Gibraltar," which they were exposed do during production, as outlined herein.

---

[15] Plaintiff requests limited discovery to name other distribution defendants.

COMPLAINT FOR COPYRIGHT INFRINGEMENT .

59. Through the trickle-down structure of Smith's residual earnings, the lead actor Will Smith[16], continues to reap huge financial benefits in his participation in "Gemini Man."

60. Plaintiff further alleges that the gap, in timeline, between commencing a statutory action under 17 U.S.C § 101 et seq,, is filled with this action for "unjust enrichment," because it meets the elements for unjust enrichment based on a quasi-contract, implied by the court on a separate set of facts, and is not duplicative of damages. i.e. Plaintiff has bestowed a benefit on defendants (excluding Ashlee Lin), that defendants have not compensated him.

**FOURTH CAUSE OF ACTION**
**CONTRIBUTORY COPYRIGHT INFRINGMENT**
(As to defendant Paramount Pictures)

<u>Specific Facts:</u>

61. Plaintiff repeats and realleges the allegations in paragraph 1 through 60 as if fully set forth herein. To prevail on this claim that Defendant(s) contributorily infringe Plaintiff's Copyrights, Plaintiff must show that Defendants "with knowledge of the infringing activity, induce[], cause[], or **materially contribute[] to the infringing conduct of**" other parties. *Matthew Bender & Co. v. W. Pub. Co.*, 158 F.3d 693, 706 (2d Cir. 1998); *see also Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971). (Emphasis added).

---

[16] Mr. Smith would have a separate cause of action against co-defendants, to recuperate any moneys from production partners, because he was under the impression defendant production parties owned their copyright outright. Furthermore, Mr. Smith was compensated contractually, not under the actor's daily rate. His employment contract grants him substantial life-long back-end payment for his participation.

62. Paramount Pictures continues to contribute to the material copyright infringement by distributing "Gemini Man," DVDs, blue ray and streaming it and collecting financial proceeds without plaintiff being compensated.

63. Paramount Pictures' actions, through its distribution of Gemini Man, exacerbate claims two and three stated above – the underlying copyright infringement and unjust enrichmnet – as well as increasing the financial damages that plaintiff.

64. Plaintiff requests injunctive order freezing distribution of "Gemini Man," and submits a separate motion with this complaint, contemporaneously.

65. It is unfair that production defendants, while ignoring the underlying claim of copyright infringement should continue to benefit from sales of "Gemini Man."

66. Continued treatment of "Gemini Man," by defendant Paramount Pictures, as an original work by production parties contributes to the underling plaintiff's copyright infringement, regarding monetary damages – as in, units sold, streamed etc.

67. If defendant Paramount Pictures were to halt distribution of "Gemini Man," during the pendency of this action, it would incentivize production parties to properly address the claims privately or through the courts and reduce monetary damages, reduce lack of marketability and maintain the value of "The Return to Gibraltar's" proposed film[17].  As opposed to the current attitude, that the copyright problem is an 'attitude problem with plaintiff' – and not defendants underlying copyright infringement.

---

[17] Stated differently, injunctive relief stabilizes the market value of "The Return To Gibraltar," pending these proceedings.

COMPLAINT FOR COPYRIGHT INFRINGEMENT .

# PRAYER FOR RELIEF

68. WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

    i.       For damages, not limited to compensatory damages, in such amount as may be found, or as otherwise permitted by law, including appropriate credit on the picture "Gemini Man," and percentage royalties to be determined by parties.

    ii.      For plaintiff's attorney's fees, costs, and disbursement in this action and other relevant statutes; and

    iii.    For punitive damages against defendants, relative to the claims.

    iv.    For injunctive relief, as outlined in the contemporaneous motion under 17 U.S.C § 502 (a).

    v.     For sum total, $1,750,000 reflecting defendants' damages (compensatory).

For such other and further relief as the court may deem just and proper.

Dated: 08/21/2024                                                                 Washington, DC

By:

_____
Signature

DR. KISSINGER N. SIBANDA ESQ
The Law Office of Kissinger N. Sibanda, PLLC
LL. B (Hons); LL.M (State / Trial); LL.M ( Federal/ Trial)
Admitted: United States Supreme Court
Second Circuit
Mail to: PO Box. 714. Livingston. NJ 07039

- 25 -

COMPLAINT FOR COPYRIGHT INFRINGEMENT .

1
2
3
4
5
6
7
8

### DEMAND FOR JURY TRIAL

9
10
11
Plaintiff, Dr. Kissinger N. Sibanda demands a trial by jury.

12
Date: August 21, 2024

13
14
15
_____
Signature

16
DR. KISSINGER N. SIBANDA

17
*Pro Se Plaintiff*

18
19
20
21
22
23
24
25
26
27
28

- 26 -