1   **DR. KISSINGER N. SIBANDA Esq, Attorney at Law,**
    The Law Office of Kissinger N. Sibanda, PLLC
2   PO Box 714. Livingston. NJ 07039
    Kissinger N. Sibanda, Atty. ID #1017426
3   ksibanda@temple.edu
    Telephone: 862-250-9684
4   *Attorney for Plaintiff.*

5            **UNITED STATES DISTRICT COURT**
           **FOR THE SOUTHERN DISTRICT OF NEW YORK**
6

7    KISSINGER N. SIBANDA                    )   **Case No: 1:24-cv-06310 (JMF)**
            *Plaintiff,*                     )       **(rel: 1-23-cv-0752 (JMF).**
8                                            )
              v.                             )
9                                            )   **PLAINTIFF'S**
     DAVID ELLISON, WILL SMITH, ANG          )
10   LEE, SKYDANCE PRODUCTIONS, LLC; a       )   **MEMORANDUM OF LAW**
     California Limited Company, GEMINI      )   **IN OPPOSITION TO DEFENDANTS'**
11   PICTURES, LLC, a California Limited      )   **MOTION TO DISMISS**
     Liability Company, SKYDANCE             )
12   DEVELOPMENT, LLC, a California Limited   )
     Liability Company, ASHLEE LIN,          )
13   PARAMOUNT PICTURES, FOSUN               )
     PICTURES INC.                           )
14          *Defendants.*                    )
                                             )
15                                           )
                                             )
16                                           )
                                             )
17                                           )
                                             )
18                                           )
                                             )
19                                           )
                                             )
20

21

22

23

24

## Table of Contents

Legal Authorities……………………………………………………………………………..3

Deep Issues…………………………..……………………………………………..…….4

Legal Argument………………………………………………….…………………...10

      i.     Plaintiff's <u>Unjust Enrichment Claim</u> Was Properly Plead And Should Go To Discovery Because Facts in the Fist Amended Complaint, Are Separate from the Copyright Claim And Render the Claim Plausible Under *Twiqbal.*

      ii.    Plaintiff's <u>Conspiracy To Deprive Copyright Claim</u> is Well Plead, and Plausible Under *Twiqbal.*

      iii.   Plaintiff's <u>Abuse Of Process</u> Claim is Well Plead, and Plausible *Under Twiqbal*, It Is Anchored In The Entertainment Industry's <u>Customary Practice</u> of Blacklisting.

      iv.   Plaintiff's <u>Unjust Enrichment Claim</u> Is Not Preempted By The Copyright Act.

      v.    Plaintiff's <u>Accounting Claim</u> is Properly Plead

Conclusion…………………………..……………………………………………………...30

1  **Legal Authorities:**

2  **Federal Cases:**

3  - *Anemone v. Metropolitan Transportation Authority*,

4  - 410 F. Supp. 2d 255, 264 n.2 (S.D.N.Y. 2006) ………………….....……10

5  - *Aslanidis v. U.S. Lines Inc.*, 7 F.3d 1067 (2d Cir. 1993)....……….............……10

6  - *Berghuis v. Thompkins*, 560 U.S. 370 (2010) ……...............……………….….10

7  - *Bezerra v. County of Nassau*, 846 F. Supp. 214, 218-219 (E.D.N.Y. 1994) …….10

8  - *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*,

9  - 494 U.S. 558, 110 S. Ct. 1339, 108 L. Ed. 2d 519 [1990]) ……………...…10

10  - *City of Los Angeles v. Hiller*, 475 US 796 (1986) ……………….………………....10

11  - *Dow Chemical Co. v. Exxon Corp.*, 139 F.3d 1470 (Fed Cir 1998)..........……….10

12  - *Draper v. United States*, 358 U.S. 307 (1959) …………............................……10

13  - *Dunaway v. New York*, 422 U.S. 200 (1979) ...........................................10

14  - *Eady v. City of New York*, No. 11-CV-1070 (TPG),

15  - 2011 U.S. Dist. LEXIS 144976, 7-8 (S.D.N.Y. Dec. 16, 2011) …….....…10

16  - *Edgar v. MITE Corp.*, 457 U.S. 624 (1982) ………………...............................10

17  - *Illinois v. Gates*, 462 U.S. 213 (1983)......................…………………….……10

18  - *In re Winship*, 397 U.S. 358, 363 (1970).......................................................10

19  - *Leatherman v. Tarrant County Narcotics and Intelligence & Coordination Unit*,

20  - 507 U.S. 163, 113 S. Ct. 1160, 122 L. Ed. 2d 517, 1993 U.S. (1941)..........10

21  - *Miranda v. Arizona*, 384 U.S. 436 (1966) ……...............................………10

22  - *Monell v. Department of Social Services*, 436 U.S 658 (1978)…………….….….10

23  - *Monroe v. Pape*, 365 U.S.167 (1961)………………………………….......10

24

- *Palmer v. City of New York*, 315 Fed. Appx. 350 (2d Cir. 2009)............................10

- *People of New York v. Jonathan Munoz*, (unreported) (2014)…………………....10

- *Robinson v. District of Columbia*, 403 F. Supp. 2d 39, 49 (D.D.C. 2005) ……....10

- *Swierkiewicz v. Sorema, N.A*, 22 Ill.534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1,

- 88 FEP Cases 1 (2002) …………………………………………………....10

- *The People of New York City v. Michael Daragjati*, (unreported) (2011)………..10

- *United States v. Shipp*, 203 U.S. 563(1906)……….…………………..….……10

- *United States v. Thomas,* 13 U.S.C.M.A. 278 (1962)...........................................10

- *Wilhelm v. City of Calumet City,*

- 409 F. Supp. 2d 991, 994 n.1 (N.D. Ill. 2006) ………..........……………10

- *Will v. Michigan Department of State Police* (1989)...........................................10

- *Wong Sun v. United States*, 371 U.S. 471 (1963) …………………………..…10

**STATUTES**

- Federal Rule of Civil Procedure……………………………………………..10

- Federal Rule of Civil Procedure 32 (a)(7)(B) i. ………………………………..10

- Federal Rule of Civil Procedure Rule 8……………………………………...10

- Federal Rule of Civil Procedure Rule 9……………………………………...10

- Federal Rule of Evidence 801.2.D …………………………………………..10

- The Supremacy Clause of the U.S. Const., Article VI, Clause 2………………....10

**OTHER AUTHORITIES**

- Gladstone, William.   Commentaries on the Laws of England. (1880)..................10

- Holmes, Oliver Wendell (2018).  The Common Law.............................................10

- <u>Pimroy on Equity</u>. Five Volumes (1884)………………………………………30

**Federal Law:**

- U.S. Const. Seventh Amendment……………………………………………………21

- Federal Rule of Civil Procedure Rule 8.a………………………………………*passum*

- Federal Rule of Civil Procedure Rule 12.b (6)……………..……………………*passum*

CONCLUSION……………………………………………………………………...30

1

2

<u>Introduction</u>

"The last will be first, and the first last."
Mathew 20:16.

3

4

The general rule is that the filing of a notice of appeal generally "confers jurisdiction on

the court of appeals and divests the district court of its control over those aspects of the case

5

6

involved in the appeal," *Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56, 58 (1982);

*Chevron Corp. v. Donziger*, 990 F.3d 191, 210 (2d Cir. 2021) (same) (quoting *Griggs*, 459 U.S.

7

8

at 56), *Ansari v. Tellez*, No. 20-CV-2041 (MKB), 2021 WL 2010399, at *2 (E.D.N.Y. Apr. 14,

2021).

9

10

Plaintiff has raised this fact with the District court, that it no longer has jurisdiction over

the appealed aspects (assumed bad faith of plaintiff related to the 18 U.S.C Section 241 claim

11

12

and the underlying facts to that claim, defenses and theories) because of the pending appeal with

the Second Circuit, 23-2348 in various pleadings. ECF. No 153-157. ( 1:23-cv-05752 (JMF)).

13

14

The Bench, despite, this caselaw, remained intransigent. Plaintiff reiterates that a stay,

was judicious, if not directed by the Supreme Court and Second Circuit. *Griggs v. Provident*

15

*Consumer Disc. Co.,* 459 U.S. 56, 58 (1982).

16

17

The argument by the bench, that 1:24-cv-06310 (JMF) and 1:23-cv-05752 (JMF), are

"separate cases," is not rooted in caselaw or the history of this matter, because this District has

18

19

categorized and re-docketed these two cases as related: despite the initial opposition from

plaintiff. The bench cannot make 1:24-cv-06310(JMF), related to 1:23-cv-05852 (JMF), when

20

21

it's convenient for defendants and their motion to dismiss, then argue it is unrelated when it is

inconvenient for defendants. A pendulum type of unfair adjudication.

22

23

Furthermore, "The purpose of the equal protection clause of

the Fourteenth Amendment is to secure every person within the State's jurisdiction against

24

1   intentional and arbitrary discrimination, *whether occasioned by express terms of a statute or by*

2   *its improper execution through duly constituted agents. Nordlinger v. Hahn*, 505 U.S. 1, 31–32,

3   112 S. Ct. 2326, 2343, 120 L. Ed. 2d 1 (1992) [1].

4                                                    *

5         Regarding defendants' instant motion to dismiss, filed before the Second Circuit

6   determines the divested issues, plaintiff submits this opposition: plaintiff denies defendants'

7   "statement of facts" asserted by defendants in their motion to dismiss as incomplete or misstated,

8   specifically. (ECF No. 77, at 4).

9         "All of Sibanda's motions were denied. *Id.,* ECF:  65 and 109." (sic) *Id.*

10        The above statement of fact is false. Plaintiff's major motion to dismiss defendants'

11  action for declaratory judgment was on the verge of being granted, (ECF No. 42) (1:22-0380)

12  (Central District). In addition, plaintiff's motion for leave to file his motion to dismiss was

13  granted, (ECF No. 31). *Id.* As well as plaintiff's motion to limit discovery (was granted in part).

14  (ECF No. 109.) *Id.*

15  _____

16  [1] All of Judge Furman's orders are prefaced with a *"a lawyer proceeding pro se,"* (sic) this matter has nothing to do
    with the fact that plaintiff is *also* a lawyer; but is based on plaintiff's status as a *science fiction writer and filmmaker*,
    roles that Judge Furman makes no mention off, in his orders. In fact, in the history of his Orders, Judge Furman, has

17  not even once discussed that plaintiff is an accomplished writer, predating this instant lawsuit by over 25 years. *See,*
    If God was a Poet (1996: New Africa Press) (Sibanda, Ken).  And predating plaintiff's becoming a licensed lawyer,

18  or *"proceeding pro se."*. *See also*: Ken Sibanda Interview (SABC: 1996)
              https://www.youtube.com/watch?app=desktop&v=qxPu0d3RBAI (Exhibit: 3).

19        And https://www.youtube.com/watch?v=DGAVyKop8tk  (Exhibit: 6). (Feature film, "1948,") Plaintiff's
    directorial debut.

20        Such sanitized and isolated remarks, *"a lawyer proceeding pro se,"* about plaintiff's biography are intended

21  to undermine plaintiff's professional credibility. To make plaintiff look like a *fool* to the public, given that the
    average lawyer would not proceed *pro se*. Plaintiff does not have the funds to hire and army of lawyers but is not
    lacking in his ability to address his rights in this court, as he has specialized in litigation post-JD..

22  d. Plaintiff has also written science fiction short stories; "Population X", and "Red Dust," and is one of a few black

23  writers writing science fiction, from Africa. That plaintiff, comes from Post-Apartheid South Africa, is something
    the bench completely ignores; it favors the defendants to act like "Return To Gibraltar," is just an isolated work

24  from a disgruntled *"lawyer proceeding pro se"* in a U.S. courtroom.  A sanitized version of the facts.

1   Furthermore, plaintiff's motion for sanctions in the Central District matter was dismissed,

2   *without prejudice*. ECF: <u>16</u> (*Skydance I*). Defendants have no *issue estoppel* on any issue and

3   defendants are wrong to assert any such advantage to this court, because they voluntarily

4   dismissed their action against plaintiff, having failed to legally change the parties' adversarial

5   positions. *See*, in contrast, claiming prior litigation, (Defs' MTD), (ECF No. 77). *Id.* at 17 and

6   18.

7   Most of defendants' motion to dismiss reads like a summary judgment motion because it

8   states that the law does not provide the remedy - 'no genuine issue of material fact' and seeks

9   judgment as a matter of law, albeit without the elementary discussion of the claims. Defendants

10  are wrong; the claims (Unjust enrichment, Abuse of Process, Conspiracy to Deprive Right), have

11  their separate elements, plausibly met by plaintiff here. Defendants do not discuss the elements

12  to the claims or the separate facts, *only the right of plaintiff to assert such claims.*

13  As a legal matter, defendants have not moved to dismiss the first claim[2], Copyright

14  Infringement, this is fatal to any claim, in which the Copyright "Theft," gives rise to other

15  supplemental claims, making them plausible. If discovery would support any of the supplemental

16  claims dismissed, here Copyright Infringement, it becomes prematurity to dismiss the

17  supplemental claims, both on liability and damages basis. "It is well settled that calculation of

18  damages is the province of the jury." *Walz v. Town of Smithtown*, 46 F.3d 162, 170 (2d Cir.1995)

19  (quoting *Ismail v. Cohen*, 899 F.2d 183, 186 [2d Cir.1990] ). *Quinn v. Nassau Cnty. Police*

20  *Dep't*, 53 F. Supp. 2d 347, 362 (E.D.N.Y. 1999).

21

22

23

---

24  [2]  Defendants only moved to dismiss Plaintiff's Second, Third, Fifth, and Sixth claims.

In general, plaintiff is under a legal obligation that should discovery fail to support any of the claims he should dismiss those claims pre-trial, on his own volition. This is the civility plaintiff has asserted to this court from the very beginning.

**<u>Deep Issues</u>**:

1. Under *Leatherman v. Tarrant County Narcotics and Intelligence & Coordination Unit*, *507 U.S. 163, 113 S. Ct. 1160, 122 L. Ed. 2d 517, 1993 U.S. 194,* the Supreme Court rejected a <u>heightened pleading requirement</u>[3], should *this matter* at bar, with plausible clams, be subject to heightened pleading, pre-discovery?

---

[3] Because Federal Rule of Civil Procedure Rules, herein FRAP, Rules <u>8</u> and <u>9</u> do not authorize heightened pleading, defendants cannot ask plaintiff to apply a different pleading standard. This matter is not fraud.

**STAMENT OF FACTS**

A. Central District Matter

2:20-CV-08145 -CBM – JCX:

Skydance Development LLC et al, (herein, Defendants) commenced this case by filing the Compliant on September 4th, 2020, pursuant to the Declaratory Judgment 28 U.S.C. §§ 2201-02, in central District as   Plaintiff Skydance Media et al Complaint ¶1.  In the complaint Skydance Media LLC sought to have declared free from copyright infringement their movie, "Gemini Man," released in 2019 and Dr. Sibanda's book: "The Return to Gibraltar," released in August 2011. Skydance Compliant at ¶17.  (ECF No. 1). *Id*.

Plaintiff, Dr. Sibanda, then filed a motion to dismiss plaintiff's complaint. The District Court ordered that prior to dismissing the court it wanted to engage in limited jurisdictional discovery. (ECF No 42. Mr. Sibanda opposed limited jurisdictional discovery on the basis that they were a New Jersey resident, and any sales of books were conducted by a party not sued on the complaint, "Proteus Books." District Court granted Skydance's limited jurisdictional discovery for the purposes of submitting supplemental brief on their opposition to Dr. Sibanda's motion to Dismiss. ECF: 55.

After conducting limited jurisdictional discovery. Including a deposition, in which Skydance Media LLC sought to build a second case against Dr. Sibanda. ECF: 122. During the limited discovery Skydance Media LLC became, for a second time, fully aware of Dr. Sibanda's residency and the fact that he is resident of New Jersey (defendants served Dr. Sibanda in New Jersey). *Id*. In addition, Skydance Media LLC served Dr. Sibanda in New Jersey and have always been aware he is a new Jersey Resident; be it in fact or constructively.

After completing their frivolous and very abusive "limited discovery," and close to a year later from the date of their complaint, Skydance Media LLC plaintiffs, moved to voluntary dismiss their case; without a motion but a mere, one-page, notice. *See*, Skydance's Media LLC's Notice Requesting Voluntary Dismissal: ECF: 91. Dr. Sibanda opposed Skydance's late dismissal and argued that Skydance Media LLC should brief their case. The court, refused, granting Skydance's late Voluntary Dismissals, and no reasonable costs against them: ECF: 99. Essentially, condoning their forum shopping and ignoring Sibanda's rights in a foreign forum.

B. **Southern District of New York**

During 1:23-cv-05752 (JMF), plaintiff filed his lawsuit in June 2023. Notable in that case, defendants sought a sanction against plaintiff to the amount of over $25,000, which had to be reduced by this court. ECF: 139. *Id*. That Order is currently under appeal.

**C. 1:24-cv-06310 (JMF)**

Regarding 1:24-cv-06310 (JMF), plaintiff refiled his lawsuit in August of 2024, defendants filed their motion to dismiss on November 4th, 2024. ECF: 77. Parties engaged in default judgment motion practice. Plaintiff moved for recusal of the bench, which was denied. ECF: 119.

**<u>Legal Standard</u>**

A motion to dismiss under Rule 12(b)(6) should be granted only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Conley v. Gibson*, 335 U.S. 41, 48 (1957) (emphasis added); see also Fed. R. Civ. P.12(b)(6); *Bell Atlantic Corp v. Twombly*, 550 U.S. 540, 570 (2007). A motion under Rule 12(b)(6) merely tests the legal sufficiency of a complaint, requiring a court to construe the complaint liberally, assume all facts as true, and draw all reasonable inferences in favor of the

1  plaintiff. *Twombly*, 550 U.S. at 556-57. A complaint should never be dismissed because the court

2  is doubtful that the plaintiff will not be able to prove all of the factual allegations contained

3  therein. Id.

4      The burden of this motion lies with the moving party, *Ragan v. NY Times*.

5  Motion to Dismiss, Rule 12(b) does not raise the pleading standard to the level required to

6  survive a motion for summary judgment. See *In re Initial Public Offering Sec. Litig*., 241 F.

7  Supp. 2d 281, 333 (S.D.N.Y. 2003).

8      The Supreme Court articulated the appropriate standard a court must follow in deciding a

9  motion to dismiss an action under the Private Securities Litigation Reform Act of1995

10 ("PSLRA"). First, a court must accept all factual allegations set forth in the complaint as true.

11 *Tellabs, Inc. v. Makor Issues and Rights*, Ltd, 551 U.S. 308, 322 (2007). Second[4], the court must

12 consider the complaint in its entirety; "the inquiry . . . is whether all of the facts alleged, taken

13 collectively, give rise to a strong inference of scienter, not whether any individual allegation,

14 scrutinized in isolation, meets that standard." *Id.*

15     Finally, the court must conduct a comparative inquiry: "[a] complaint will survive if a

16 reasonable person would deem the inference of scienter cogent and at least as compelling as any

17 opposing inference one could draw from the facts alleged." *Id*. at 324. The facts here, and as

18 alleged by Dr. Sibanda more than adequately survive such a comparison.

19     "[T]he [Supreme] Court is not requiring a universal standard of heightened fact pleading,

20 but is instead requiring a flexible `plausibility standard,' which obliges a pleader to amplify a

21

22

23 [4]  Because defendants have not sought dismissal of the very heart of the matter: claims one and four, Copyright
Infringement and Contributory copyright infringement, the jurisdictional claims; dismissal of the supplemental
claims, does not pass muster under the *Tellabs, Inc Test*, if the Court considers that discovery, will do just that –
24 discover facts supporting supplemental claims, later. *Id.*

claim with some factual allegation in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir.2007).

As stated, on a motion to dismiss, the Court must assume that all of the facts alleged in the Amended Complaint are true, construe those facts in the light most favorable to Plaintiffs, and draw all reasonable inferences in favor of Plaintiff. See *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 169 (2d Cir. 2009); *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir.2008); *U.S. Bank Nat. Ass'n v. Ables & Hall Builders, 582 F. Supp.* 2d 605, 606 (S.D.N.Y. 2008) (Chin, J.).

Furthermore, the decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) expanded Bell *Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) from antitrust cases to Federal Rule of Civil Procedure Rule 8.a pleading per se.

More relevant here, on a motion to dismiss, Court does not make credibility determinations and evaluates agreements based solely on their terms (rather than through statements made about them) McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc., 638 F. Supp. 3d 333, 337 (S.D.N.Y. 2022), reconsideration denied, No. 22-CV-1138 (JGLC), 2023 WL 8440860 (S.D.N.Y. Oct. 16, 2023)[5].Plaintiff adopts the legal inference from the *Twombly* and *Iqbal* cases, *supra*, jointly as *Twiqbal*.

## **ARGUMENT**

"The life of the law has not been logic, but experience."
Oliver Wendell Holmes Jr. Common Law

i.    **Plaintiff's Unjust Enrichment Claim Was Properly Plead By Plaintiff And Should Go To Discovery Because Facts in the Fist Amended Complaint, Are Separate from the Copyright And Render the Claim Plausible Under *Twiqbal***

---

[5] [ Defendants' legal standard, (Defs'. MTD), (ECF No. 77). *Id* at 11. Does not fully address the legal standard for a motion to dismiss, and how Rule 12.b (6), is adjudicated, the judge's evaluation of evidence, presumptions, the plausibility goal, and ultimately the caveat against prosecutorial readiness requirements.]

1    For plaintiff to succeed in a claim for unjust enrichment he must show that, it is plausible at

2    the preliminary stage of his complaint; and not foreclose his claim – plaintiff's first amended

3    complaint, does just that. And does not offer conclusory statements, but a separate set of fact.

4    Skydance Defendants are wrong to suggest that it is *not plausible* that plaintiff cannot

5    support his claim for unjust enrichment. Given that <u>additional</u> facts have not been discovered.

6    Plaintiff has plead that, defendants entered into contracts, stating they have an original work, of

7    which the work was not original, this contract gave defendants a <u>benefit</u> they were not entitled to,

8    separate from the copyright infringement (theft). This is a plausible claim supported by <u>separate</u>

9    <u>facts</u> to the Copyright theft. (ECF. No 29). FAC ¶¶ 53-61.  It is not conclusory[6] or singular to the

10   Copyright infringement, which is proven by strict liability, as an evidential burden on plaintiff –

11   ownership of copyright and substantial similarity.

12    Defendants are confusing the limitation of damages on the two overlapping claims (Unjust

13   Enrichment and Copyright Infringement) with their separate elements in the liability stages.

14    Thus, the *unjust enrichment claim*, is not duplicitous or a time gap, but seeks to disgorge

15   defendants on a separate fact pattern/theory of contractual facts and assertion of "original

16   ownership," not the under the Copyright Act.  FAC ¶¶ 53-61. Given that defendants do not seek

17   to dismiss the first claim, *Copyright infringement*; *Unjust Enrichment*, is plausible, at this stage;

18   especially when discovery may yield facts in its support based on contractual benefits of which

19   plaintiff was not compensated. *Id.*

20    Defendants are wrong that the damages plaintiff gains from Copyright Infringement will

21   substitute for the damages he should get under any quasi-contractual theory, properly plausible.

22   The damages for the two claims are separate, if not distinct from each other. For the copyright

23

24   _____
     [6] Conclusory means that the legal conclusion comes with <u>no facts</u> to support it.

claim, the damages are compensatory for the loss of licensure due to copying the work, and reduction in market value of the copied work – strict liability. This is the damage to the work itself, not contractual in nature. Under separate-accrual rule, when defendant commits successive copyright violations, statute of limitations runs separately from each violation. 17 U.S.C.A. § 507(b). *Monbo v. Nathan*, 623 F. Supp. 3d 56 (E.D.N.Y. 2022), reconsideration denied, No. 18-CV-5930 (MKB), 2022 WL 4134455 (E.D.N.Y. Sept. 11, 2022). Defendants continue to infringe on plaintiff's original copyright for every act selling or streaming "Gemini Man."

In comparison, for the unjust enrichment claim, plaintiff is stating that since the work "Gemini Man," is not original, he would have benefitted form that distribution contracts, regardless of the damages available under the Copyright Act. These are clearly two theories for liability and damages; and plaintiff has pled separate facts, showing that the unjust enrichment claim stands on quasi-contractual basis.

Defendants are equally wrong because for Copyright infringement: Defendants continue to infringe plaintiff's Copyright, and in fact enjoy from the huge benefits in streaming, DVD and blue Ray sales. Recently, Gemini Man, enjoyed a markable increase in popularity on Netflix.

To say defendants are unrepentant, deliberate and willful in their copyright Infringement, would be putting it lightly – they perceive themselves as having a right to blacklist people. Defendants not only continue to produce these digital streams for "Gemini Man," but have engaged in litigation tactics in this matter, evident of the disdain they hold towards plaintiff and his rights, refusing to consider private settlement, which his court has been privy to.

The primary object of the Copyright Act, seeking s against plaintiff who prosecute their rights under this act was never an intention of the act. Plaintiff does concede that 18 U.S.C.

section 241, was the incorrect vehicle for the facts, but his Copyright complaint, comes from good place, so does the supplemental claims.

### ii.    Plaintiff's Conspiracy To Deprive Copyright Claim is Well Plead, and Plausible Under *Twiqbal*

Regarding the conspiracy to deprive plaintiff of his legal right. Plaintiff acknowledges that at first, the claim would seem far-fetched but when considering the history of Hollywood and its conspiracies, the bench will see the plausibility of the stated claim, as the subtext.

Put differently, conspiracy to deprive talent of work, positions or credit in the film industry, is the stock and trade of Hollywood. This court may be aware of the conspiracies under the "MeToo" movement to deprive women of work who refused to engage in sexual trade-offs with Hollywood executives, a form of blacklisting. The most famous case volved Harvey Weinstein. The issue of conspiracies to derive women of work, was tackled extensively during the Wainstein case, to state that here, plaintiff is making an isolated charge to an innocent industry, regarding customary practices of backlisting – extended to an outsider, would be to ignore the industry wide practice of blacklisting in general, its subculture or recent history (Weinstein cases)[7].

 Stated more mathematically, the "#MeToo" movement was born from opposition to blacklisting, not the other way round ( #MeToo led to blacklisting (sic)). The #MeToo movement is only a subset of the totality of the practice known as blacklisting; but is living proof that the abuses are manifest.

If defendants want to adduce evidence to rebut, the subculture, in which plaintiff asserted his conspiracy to deprive copyright charge then they can direct that during discovery. But at this

---

[7] Plaintiff intends on using an expert, for both the (a)substantial similarity of copyrighted work and the (b) criminal history of Hollywood's blacklisting practice.

early state, it is premature to suggest the facts stating a conspiracy to deprive, are factually

impossible. They are not only plausible given the industry's *modus operandi* but are directly

plausible given the facts in the FAC ¶¶ 13-89:

A reputable agent was approached (Rick Rosen), the defendants had access to the

material, the defendants stole the work, but do not want to accredit plaintiff. To hide the primary

theft, they devised a plot, to blacklist plaintiff, reduce plaintiff's credibility, standing, and / or get

a default judgment in a foreign jurisdiction. *Id*. This meets the requirements under *Twiqbal*,

squarely.

In most instances film deals are staffed by an agent; meaning an agent, will approach a

director and actors to package a deal; within the same agency or call another agent[8]. It is

uncontroverted Hollywood had direct access to plaintiff's book, through WWE's <u>solicited</u>

<u>submission</u> given to Rick Rosen. Exhibit: <u>1</u>, intended for Dick Wolf, as "Declassified: SI,"

declassified. *Id*. That package included the book, film treatment to <u>D: SI</u> and a video clip. These

materials were solicited by WME agent Rick Rosen, who will be subpoenaed to testify regarding

the contact (with Copyrighted material) element, should this matter go to trial). I*d*. Supporting

plaintiff's WWE submission to Rick Rosen was the following clip:

https://www.youtube.com/watch?v=y5ICdBuANoI

Exhibit: <u>2</u>.

As backdrop, Conspiracies, are historically, if not culturally, the stock-and-trade of

Hollywood. For plaintiff to assert that there existed a conspiracy, to get away with stealing his

copyright, is not *ridiculous* but is *factually plausible* within that subculture, anchored in the

---

[8] Hollywood functions as a tight-neat dysfunctional family.

*modus operandi* of Hollywood and its grandiose self-image of red-carpet royalty and pageantry; in addition, to the very detailed facts in plaintiffs FAC ¶¶13-87.

### iii.    Plaintiff's Abuse Of Process Claim is Well Plead, and Plausible Under *Twiqbal*:
### a.  It Is Anchored In The Industry's Customary Practice of Blacklisting

The term *blacklisting*, originally stemming from the House Un-American Activities Committee (HUAC), has now been adopted or bastardized, to mean Hollywood studio executives will make sure talent is unemployable, as an unspoken part of their power or reach. In the context of this lawsuit, this is not only chickens coming home to roast, but the whole flock returning, because defendants sought to use the <u>backlisting system</u> by filing a default judgment with no intention of seeing it through, but as a blemish to plaintiff's record or as a badge of servitude. Even though Hollywood is not on trial here, the subtext and modus operandi, is the backdrop by which plaintiff approaches this court.

Defendants are correct that if they were regular folk, the idea of conspiracies, would seem somewhat far-fetched, but this court is not adjudicating everyday folk here. Hollywood executives, with the power to green light movies, being in many instances billionaires[9], are some of the most powerful people in the world, even more powerful than presidents of developing countries.

Considering also that defendants' movies are for the most part sequels and derivatives: "Mission Impossible", "Transformers" and Tom Clancy's novels; plaintiff's allegations have a contextual basis. Accordingly, raising the concern, that "Gemini Man," is substantially like "The Return To Gibraltar," because it stole what is germane to the book, is not random, but believable,

---

[9] The father of David Ellison, Larry Ellison for example, is one of the richest men, in the world, with a net worth of 231.4 Billion. And David Ellison himself, has a net worth of 160 Billion. Between the two, they have a combined net worth of over 390 Billion.

In comparison, the GDP of South Africa, one of the richest countries in Africa, with all its diamonds, is around 377 Billion US dollars. This footnote addresses the economic disparity between plaintiff and defendants.

at this stage based on defendants' production *modus operandi*. It is also plausible under FRCP

Rule <u>8</u>., because plaintiff's facts are cited and specific enough. *See*, FAC ¶¶ 13-87.

In addition, Defendants do not address their purported immunity more intricately, and as

to what this litigation immunity means regarding plaintiff's accusations – but there is no

immunity for mis- prosecution, abuse of the law, even for federal agents, which underscores any

claim they seek to have regarding immunity. *See generally*, *Bivens v. Six Unknown Named*

*Agents*, 403 U.S. 388 (1971). (Criminal context).

In fact, defendants' motion to dismiss never addressed litigation immunity, in the context

of defendant involvement (actions and filings), in the Central District Matter or cited caselaw to

suggest a lawyer's immunity in a similar situation.

In this matter at bar, plaintiff presents a very strong case for both the <u>contact</u> and

<u>similarity elements</u> for the copyright infringement claim: Plaintiff's book was released, August

of 2011, (earlier than defendants' movie), the contact with Rick Rosen (WWE) and Will Smith's

stunt double, occurred in 2014, and the movie Gemini Man was released in 2019; 8 years after

the book's release. The book was available on amazon, bn.com and plaintiff did an interview

with various news outlets. *See*, FAC¶¶ 18-89. There is some credibility at this stage to plaintiff's

infringement claim.

Furthermore, a strong copyright infringement supports the supplemental claims: hence

dismissing the supplemental claims would be premature, as defendants do not ask that the main

copyright claim be dismissed, and discovery may well support efficacy of the supplemental

claims from a factual position.

Litigation immunity, in its broadest sense refers to protections against accusations of

defamation against a lawyer's pleadings or advocacy, participation in court and motion practice.

It does not give blanket protection to abuse evidence, standards of evidence, hide evidence or ignore evidence. When a lawyer commits such omissions, they do not have litigation immunity. This is what defendant Lin is accused off.  *See generally*, *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972), and *Jencks v. United States*, 353 U.S. 657 (1957): even though the three cited cases are in criminal practice, the point is that omissions, if any, in a civil lawsuit are not protected by any immunity because litigation is based on *discoverable truth, not deception*. Period. Litigation honesty and ethical conduct are the ideal, whether it is criminal or civil practice is irrelevant, as ethical rules apply to both, more pointedly FRCP Rule 11.

Stated differently, instituting a lawsuit for the purpose of intimidating a person against asserting their free speech, is not a protected activity of a lawyer, in a criminal or a civil matter.

**b. Defendant Lin Does Not Have Immunity Against Conspiracy and Abuse of Process Claims[10]**

As a pointed rebuttal, Defendant Lin does not have litigation immunity, be it *absolute (like judges)* or *qualified immunity (like police officers)*, for abusing the litigation process.

This is inherent in the litigation Rules, Rule 11 specifically, and the court's inherent power to sanction attorneys for conduct it observes. Lawyers do not have 'unlimited power' to instigate lawsuits, as they please, and drop them, all for impermissible motives, injuring the rights of the sued party. [ This is squarely, the Central District Matter, from plaintiff's view]. FAC ¶¶ 69-87.

---

[10] Defendants rely upon, *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74- 75 (2d Cir. 1998), for immunity, but this case has been regarded by other courts as bad precedent or distinguishable on tits facts. See, *Lewis v. Clarke*, 581 U.S. 155, 137 S. Ct. 1285, 197 L. Ed. 2d 631 (2017) (refusing to follow).

1    Moreover, former clients have a right to sue for legal malpractice, against the very lawyer

2    they have used. *Id*. The very tort of legal malpractice underscores any imaginary immunity

3    offered to a lawyer for abusing the legal system or clients, defendants are articulating. (ECF No.

4    77). *Id* at 9.

5    The abuse of process claim is thus plausible because defendants first legal action against

6    plaintiff in Central District California, was intended to use a legitimate legal process, but with no

7    intention of addressing the underlying copyright ownership question, but instead to use it to

8    cement the Copyright theft, by fencing a judgment in the wrong forum. This is an impermissible

9    use of the Declaratory Judgment Act. *See*, *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 495, 62

10    S.Ct. 1173, 86 L.Ed. 1620 (1942).

11    **c. Plaintiff's Lawsuit is Protected By The Seventh Amendment**

12    To argue that plaintiff's FAC is not plausible, *under a rebuttal* of what defendants

13    sought to do in the Central District matter, is false and/or premature. The motives of defendants

14    are essentially a *triable issue* that goes to a jury to adjudicate motive, protected by the Seventh

15    Amendment[11].  This is what trials are for: to test facts in line with advocacy or first amendment.

16    "Congress cannot divest parties of Seventh Amendment right merely by relabeling

17    preexisting common-law cause of action to which that right attaches and assigning it to

18

19

---

20    [11] Plaintiff asserts that he has a right under the Seventh Amendment to have the issue of motive (for filing the central district matter in the wrong forum by defendants) tried by a jury of his peers, not by Judge Furman alone. For this

21    bench to make statements regarding motive, and credibility when adjudicating a FRAP Rule 12.b.6 motion is nothing short of being inappropriate. Trials are held to determine the validity, and credibility of facts. By contrast, a

22    Rule 12.b.6 determination is not a substitute for the Seventh Amendment; wherein adjudicating the plausibility of a claim results in the sitting judge finding a case for the movant based on a credibility inference in the movants favor?

All inferences are in plaintiff's favor in adjudicating a Rule 12.b.6 motion, as should be the case given the Seventh

23    Amendment:

The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved.

24

specialized court of equity." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S. Ct. 2782, 106 L. Ed. 2d 26 (1989).

The Seventh Amendment thus applies not only to common-law causes of action but also to statutory causes of action " 'analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty.' " *Feltner, supra,* at 348, 118 S.Ct. 1279 (quoting *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 42, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989)); accord, *Curtis, supra,* at 193, 94 S.Ct. 1005. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 708–09, 119 S. Ct. 1624, 1638, 143 L. Ed. 2d 882 (1999).

Here plaintiff's causes of action present a valid jury determination right separate from the court's FRCP Rule 12.b(6) adjudicative powers.

This, triable, is further supported by the fact that defendants touted they "never read," or "read enough" of the book before filing their actions; then abandoning the lawsuit after extensive discovery of facts already known on day one. This is evidence that a jury may well find, shows that defendants' "declaratory" action was abuse of process, not intended for its legal adjudication. The filing of a lawsuit against plaintiff, was in fact intended as a form of "blacklisting." Defendants had no intention of seeking legal remedy to have their right in Gemini Man adjudicated nor, in having the proper court (venue) adjudicate, but merely to have the record of their lawsuit against plaintiff publicly available as proof of the "blacklisting." To have anyone who deals with plaintiff to see that "black spot," and ignore plaintiff totally. In other words, defendants sought to render plaintiff unable to work in Hollywood.

Defendants' lawsuit (declaratory judgment) was never about the merits of any copyright, the court's jurisdiction to address the merits, but was intended to humiliate and blacklist plaintiff, based on plaintiff's being a black director demanding intellectual property ownership[12].

**Essentially defendants have engaged in what is known as SLAPP Litigation:**

Strategic lawsuits against public participation, which is litigation intended to censure the plaintiff from asserting their right; both New Jersey And New York have anti-SAPP provisions. One notable feature about SLAPP, is <u>forum shopping</u> and that, the plaintiff does not <u>normally expect to win the lawsuit</u>. The plaintiff's goals in SLAPP are accomplished if the defendant succumbs to fear, intimidation, mounting legal costs, or simple exhaustion and abandons the criticism, here assertions of Copyright Infringement. This is squarely the accusation against Defendants first action in the Central District Matter, it was intended as a SLAPP against plaintiff, Dr. Sibanda.

Thus, defendants are wrong to state that they were protected in their litigation choices and approach when they engaged in SLAPP litigation. This is a triable issue, that goes before a jury.

The primary intention of the Central District lawsuit was "blacklisting," not winning, thus plaintiff claim of abuse of process is a  plausible claim under the anti-SLAPP law as a backdrop: Defendants file a lawsuit; are warned  of lack of jurisdiction; are warned there is no personal jurisdiction against plaintiff; never engage in settlement or want it, only released from lawsuits; never transfer the lawsuit to a proper venue with a satellite of their lawyers, Eisner LLP. A jury

---

[12] Stated more obviously, Hollywood, would prefer that plaintiff's work be presented to the world, by a "white South African," such as Charlize Theron, and not a black man from Post-Apartheid South Africa. In that sense, they regard the Copyright theft as justified. This is the same systemic problem Native Americans faced, in Hollywood, where it was preferable that a lead role with a Native American is played by white actors with brown shoe polish on his face.

can conclude that this was a SLAPP lawsuit, intended to intimidate plaintiff from further

asserting his Copyright infringement[13].

As stated earlier, this court should take the practice of blacklisting, which Hollywood

executives are proud of, for what it is intended, when it is done and when the victim ( here

plaintiff) addresses it. Filing lawsuits to support their practice of blacklisting was abuse of

process. Period.

Defendants are wrong in how they understand the elements of this claim and what is

needed to plead and support a jury determination**.** In fact, it is an impermissible use of

Declaratory Judgment for "procedural fencing and forum shopping." *See*, *Brillhart v. Excess Ins.*

*Co.,* 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). The filing of a lawsuit does not

grant the filer immunity.

Abuse of process deals with use of a legitimate process for wrong motives. Plaintiff is not

arguing that defendants did not have a right to file declaratory judgments or litigate for the

correct purpose but that they have no right to use declaratory judgments for the wrong ends

(abuse of process), intended for *ulterior motives*. The ulterior motive, here was blacklisting; not

merit determination in a tribunal, but putting a badge of servitude on plaintiff.

Accordingly, a jury cam find that defendants placed an obstacle to plaintiff's prosecution –

this is an issue (motives for their underlying litigation choices in Skydance I) which is triable

before a jury as direct testimony. The claim survives motion to dismiss. In addition, this issue

has been divested on appeal. Defendants argue, (Defs' MTD) at 19, that this court give its prior

Order, (ECF No. 130), preclusive value. The request is puzzling, as that order, ECF: 130, is

---

[13] Interesting enough, Skydance's then attorney, Ashlee Lin, never raised that plaintiff did not have a registered copyright for "The Return To Gibraltar," in the Central District Matter. Not even once, in any of her pleadings. She has since tried to appear *pro hac vice* in this matter, only to be rejected by ECF for filing a Certificate from the California Bar, and not the California Supreme Court. (ECF No. 111).

under appeal. *See*, defendants Motion for Sanctions. What defendants are essentially asking this court to do, is to refuse to respect plaintiff's <u>right of appeal</u>, and treat him like a second-class citizen, who has no constitutional right of appeal they should respect, whatsoever. To go ahead with a second related matter, as if plaintiff has not appealed the Order's previous findings and basis for sanctions in the first matter, similar issues. As a general concern, both the bench and defendants have to treat plaintiff's appeal with the seriousness the law dictates under Supreme Court divestment jurisprudence; to continue to ignore the fact that Order, (ECF No. 130), was appealed, is improper for both parties[14].

To argue that the two matters, 1:23-cv-05752 IJMF) and 1:24-cv-06310 (JMF), are 'flatly two different cases,' is very dishonest. It is defendants who stated the two cases were related in their ill-fated, Motion to Compel, 1:23-cv-05752 (JMF). (ECF No. 134).

The court then re-docketed the matter as a related matter assigning it back to defendants' judge of choice; from Judge Koetli back to Judge Furman.  So relating the two matters came from defendants, when it suited them.

This was done, without plaintiff even filing a related case form. To now turn and say, the two cases, 1:23-cv-05752 (JMF) and 1:24-cv-06310(JMF) are 'flat out separate,' is disingenuous for both the bench and defendants, alike. Not only is the central issue appealed in the first matter, now *also* the central issue in the later action (motive for Central District filing), but parties remain the same, with a few additional defendants. How any impartial judge would be comfortable proceeding in this related matter, despite the appeal, is a million-dollar question, further supporting the assertion that plaintiff's recusal request was justified. Plaintiff has timely

---

[14] Plaintiff has asked defendants to withdraw their motion to dismiss. Exhibit: <u>7</u>, while the appeal is pending, and will docket a second Rule <u>11</u> motion, in the event that defendants remain intransigent.

1   asserted his appeal rights: he appealed ECF No. <u>130</u>, amended his appeal, added ECF No. <u>154</u>

2   (sanctions) and ECF <u>No</u>. 157 (default judgment). *See*, Exhibits: <u>4</u> and <u>5.</u>

3       The reasoning of the second circuit on these appeals and its amendments, renders the issues

4   such that the lower court should have stayed any proceeding without its peerage determining the

5   issues. But instead, this bench has decided to move ahead, ignoring the appeal and the right of

6   the Second Circuit to review its orders. A total shame, in plaintiff's view, when considering that

7   an appeal divests, a lower court from proceeding on the same issue, as if the issue has not been

8   appealed. This is parallel adjudication of an issue. A separate but equal application of the law of

9   divestment, for a black litigant, to undermine his case-in-chief.

10      This procedure, by the lower court, is a complete refusal to follow the law, regarding a

11  particular litigant, and is dissimilar treatment – compared to instances when divestment is

12  followed squarely. Stated more obviously, this is <u>race discrimination</u> by the bench. Nullifying the

13  dictates of the law (divestment of issues appealed) because plaintiff is not white. The law of

14  <u>appeal divesture</u>[15] is settled law; it is not first impression and has been so settled that it is

15  expanded into bankruptcy proceedings:

16      "Filing of notice of appeal confers jurisdiction on appellate court and divests trial court of

17  control **over those aspects of case involved in the appeal**." <u>*In re Winimo Realty Corp.,*</u> 270

18  B.R. 99 (S.D.N.Y. 2001). (Emphasis added).

19      But in general, divesture is well known and understood by any sitting judge. *Griggs v.*

20  *Provident Consumer Disc. Co.,* 459 U.S. 56, 58 (1982); *Chevron Corp. v. Donziger*, 990 F.3d

21

22

---

[15] This is *Plessy v. Ferguson*, 163 U.S. 537 (1896), principle of "separate but equal" type of invidious discrimination
by the bench: caselaw should be applied uniform regardless of who are litigants. An appeal divests issues appealed,
until the Appeal's court has finished adjudicating on those issues. Period.

191, 210 (2d Cir. 2021) (same) (quoting *Griggs*, 459 U.S. at 56), *Ansari v. Tellez*, No. 20-CV-2041 (MKB), 2021 WL 2010399, at *2 (E.D.N.Y. Apr. 14, 2021).

Restated, the issue defendants are holding onto as being in their favour (motive for filing the central district matter), in their motion to dismiss has been appealed and divested. Lower courts must respect this! This is the law. This court cannot ignore divesture and was supposed to patiently await the second circuit's decision before taking briefing on the motion to dismiss – <u>not to engage in parallel adjudication</u>, given that either party's legal advocacy will be determined by the higher court's input, the second circuit. To ask for briefing when the issues are divested was adjudication outside of the law, an abuse of power.

In the alternative, it was a clever attempt (by treating plaintiff's pending appeal with disdain and continuing with its adjudication) and arguing, by ECF, from the sidelines – for the court to influence plaintiff's pending appeal; to signal to the appeal's court what it should do, and how they should do it, equally reprehensible.

There was no prejudice, for either party, to await briefing of this motion to dismiss, until the second circuit has decided the issues appealed[16]. Indeed, defendants never submitted any opposition to plaintiff's stay motion and their legal basis.

**iv. Plaintiff's Unjust Enrichment Claim Is Not Preempted By The Copyright Act.**

Defendants are wrong in their understanding of *Monbo v. Nathan*, 623 F. Supp. 3d 56, 113 (E.D.N.Y. 2022), which they rely heavily on:

The *Monbo* case from the Eastern District, wherein the court held that the copyright claim was time barred, and the plaintiff in that case then pivoted on an "unjust enrichment" claim. Here, this court has not held that plaintiff's copyright claim is time barred, to the contrary,

---

[16] No preliminary injunction was placed in this matter, and time is not of the essence as defendants continue to enjoy their rights.

having addressed a fully briefed motion to dismiss by defendants, (1:23-cv05752 (JMF) this court stated that plaintiff can refile it.

Equally distinguishable is that the *Monbo* case was a summary judgment decision; based on that case's cross-motions. It is a Rule 56 ruling. Period. Our instant attention sis a Rule 12.b decision.

For Copyright Act preemption to apply, a state law claim must involve acts of reproduction, adaptation, performance, distribution or display; even if claim otherwise satisfies general scope requirement, **the claim is not preempted if it includes any extra elements that make it qualitatively different from copyright infringement claim**. 17 U.S.C.A. § 106. *Monbo v. Nathan*, 623 F. Supp. 3d 56 (E.D.N.Y. 2022), reconsideration denied, No. 18-CV-5930 (MKB), 2022 WL 4134455 (E.D.N.Y. Sept. 11, 2022). (Emphasis added).

Here, plaintiff's FAC, has included separate facts for the conspiracy, abuse of process and unjust enrichment claims, separate from the Copyright Act. FAC ¶¶ 46 and 70. Th elements for unjust enrichment are separate from the strict liability standard under the Copyright Act. This is an issue defendant never addressed: *different burdens of proof for plaintiff's claims and its elements.*

**V. Plaintiff's Accounting Claim is Properly Plead**

Regarding the sixth claim, defendants wrongfully argue that plaintiff's sixth claim, Accounting, is preempted by the Copyright Act. However, their proffered jurisprudence is not conclusive:

*McKenzie-Morris v. V.P. Records Retail Outlet, Inc.*, 2023 WL 5211054, at *10-11 (S.D.N.Y. Aug. 13, 2023) (collecting cases and dismissing an accounting claim that was preempted by a **time-barred Copyright Act claim**). (Defs.'MTD) at 20. (Emphasis added).       (Emphasis added)

This is a false premise. Here, the copyright claim has not been found to be time barred nor do defendants seek to have it dismissed. In addition, Accounting is not an equitable remedy, preempted by the Copyright Act, but must be pleaded for the court to allow its execution to go forward or plaintiff will lose his discoverable right. If defendants are willing to stipulate to an accounting, then the claim can be dismissed, but defendants are wrong that the copyright Act affords accounting on its surface.

Furthermore, the Accounting claim is so intricately connected with the Copyright claim itself, that it would be premature to dismiss it:

The *McKenzie-Morri,* cited by defendants*,* case is not an authority that Accounting is preempted by the Copyright Act. Period.

Defendants' arguments 'that the properly plead, second, fourth, fifth and sixth, claims' are pre-empted by the Copyright Act, are in general unavailing:

*Cambridge Literary Props., Ltd. v. W. Goebel Prozellanfabrik G.M.B.H. & Co*., 448 F. Supp. 2d 244, 256 (D. Mass. 2006), is a First Circuit case dealing with a time barred Copyright claim.

*The reliance for preemption on *Monbho* case is even more precarious, as already discussed here. *Supra*. *Monbho* case is a summary judgment decision.

*Stanacard, LLC v. Rubard, LLC*, No. 12-CV-5176 (CM), 2016 WL 462508, at *22 (S.D.N.Y. Feb. 3, 2016)); is also a summary judgment decision.

Defendants did not discuss the elements for pre-emption, or the seminal scholarship on the subject; not even the Constitutional provision itself: (U.S. Const. art. VI., § 2). Preemption is usually said to have happened when the legislated act replaces the remedies squarely: for

example, the Copyright Act preempts claims for Illegal Copying; *but not contractual liability* or other claims with different elements.

Here, it is however doubtful, that plaintiff's state claims, are pre-emptied by a Federal Copyright Act, in areas not covered by it, with separate facts and elements, and being a product of state law, as a general legal application. Most states have retained the Common Law as a gap filer, in addressing remedies. In that sense, defendants are confusing equity principles with the Common Law remedies; plaintiff's Unjust Enrichment, Abuse of Process, and Conspiracy claims, are claims deriving from state Common Law precedent *not equity*[17].

Conclusion

Plaintiff respectfully requests that defendants' motion to dismiss be denied, and that this matter be set for discovery on all claims.

And for reasonable costs in defending defendants' motion to dismiss, because defendants' motion to dismiss violated accepted procedural legal rules and case law, regarding divesture of appealed issues, and knowledge of equitable remedies, which attorneys, Labate and Michalidis, admitted to this bar, should know and appreciate, regardless of their personal feelings towards an adversary.

And for any *just and proper* remedy the court deems fit.

Dated: 12/11/2024                                          Washington, DC

By:

_____
Signature

---

[17] Pimroy on Equity, this Five-volume set, discuss in detail what Equity is. Unless it is in very specific commercial law or chancery court, in the U.S. Equity does not exist as a basis to recover injury. Despite this, defendants mistakenly stated over five times that plaintiff presented "equitable claims." Defs. MTD at 4,7,8.

1

DR. KISSINGER N. SIBANDA[18] ESQ

2

LL. B (Hons); LL.M (State / Trial); LL.M (Federal/ Trial); SJD.

Admitted: United States Supreme Court

3

U.S. Department of Justice[19]

950 Pennsylvania Avenue NW

4

Washington DC 2053

VIA CERTIFIED MAIL

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

_____

23

[18] (...)

24

[19]  Regarding criminal prosecution of 18 U.S.C Section 241 against defendants.