1  **DR. KISSINGER N. SIBANDA Esq, Attorney at Law,**
   The Law Office of Kissinger N. Sibanda, PLLC
2  PO Box 714. Livingston. NJ 07039
   Kissinger N. Sibanda, Atty. ID #1017426
3  ksibanda@temple.edu
   Telephone: 862-250-9684
4  *Attorney for Plaintiff.*

5              **UNITED STATES DISTRICT COURT**
            **FOR THE SOUTHERN DISTRICT OF NEW YORK**
6

7   )
    KISSINGER N. SIBANDA        )   **Case No: 1:24-cv-06310 (JMF)**
        *Plaintiff,*            )       **(rel: 1-23-cv-0752 (JMF).**
8                               )
        v.                      )
9                               )   **PLAINTIFF'S**
    DAVID ELLISON, WILL SMITH, ANG )
10  LEE, SKYDANCE PRODUCTIONS, LLC; a )  **MEMORANDUM OF LAW**
    California Limited Company, GEMINI )  **IN SUPPORT OF ENFORCEMENT OF**
11  PICTURES, LLC, a California Limited )  **SETTLEMENT AGREEMENT**
    Liability Company, SKYDANCE      )
12  DEVELOPMENT, LLC, a California Limited )
    Liability Company, ASHLEE LIN,   )
13  PARAMOUNT PICTURES, FOSUN        )
    PICTURES INC.                    )
14        *Defendants.*              )
                                     )
15                                   )
                                     )
16                                   )

17

18

19

20

21

22

23

24

                                1

1
2

**Table of Contents**

3
4
5
6
7
8

Legal Authorities……………………………………………………………………………3

Deep Issues……………………..………………..…………………………….……4

Legal Argument………………………………………….…………………....10

Conclusion……………………..…………………………………………...16

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

1

2

**Legal Authorities:**

3

**Federal Cases:**

4

- *Anemone v. Metropolitan Transportation Authority*,

- 410 F. Supp. 2d 255, 264 n.2 (S.D.N.Y. 2006) …………………....……10

- *Aslanidis v. U.S. Lines Inc*., 7 F.3d 1067 (2d Cir. 1993)....……….............……10

- *Berghuis v. Thompkins*, 560 U.S. 370 (2010) ……..............……………….……10

- *Bezerra v. County of Nassau*, 846 F. Supp. 214, 218-219 (E.D.N.Y. 1994) …….10

- *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*,

- 494 U.S. 558, 110 S. Ct. 1339, 108 L. Ed. 2d 519 [1990]) …………….....10

- *City of Los Angeles v. Hiller*, 475 US 796 (1986) …………….……………….....10

- *Dow Chemical Co. v. Exxon Corp*., 139 F.3d 1470 (Fed Cir 1998)..........……….10

- *Draper v. United States*, 358 U.S. 307 (1959) …………......................……….10

- *Dunaway v. New York*, 422 U.S. 200 (1979) ............................................10

- *Eady v. City of New York*, No. 11-CV-1070 (TPG),

- 2011 U.S. Dist. LEXIS 144976, 7-8 (S.D.N.Y. Dec. 16, 2011) …….....……10

- *Edgar v. MITE Corp*., 457 U.S. 624 (1982) …………………......................…10

- *Illinois v. Gates*, 462 U.S. 213 (1983)........................………………………10

- *In re Winship*, 397 U.S. 358, 363 (1970)....................................................10

- *Leatherman v. Tarrant County Narcotics and Intelligence & Coordination Unit*,

- 507 U.S. 163, 113 S. Ct. 1160, 122 L. Ed. 2d 517, 1993 U.S. (1941).........10

- *Miranda v. Arizona*, 384 U.S. 436 (1966) ……......................……….........10

- *Monell v. Department of Social Services*, 436 U.S 658 (1978)……………..……10

- *Monroe v. Pape*, 365 U.S.167 (1961)………………………………………..10

- *Palmer v. City of New York*, 315 Fed. Appx. 350 (2d Cir. 2009)..........................10

- *People of New York v. Jonathan Munoz*, (unreported) (2014)………………...10

- *Robinson v. District of Columbia*, 403 F. Supp. 2d 39, 49 (D.D.C. 2005) …….…..10

- *Swierkiewicz v. Sorema, N.A*, 22 Ill.534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1,

- 88 FEP Cases 1 (2002) …………………………………………….....10

- *The People of New York City v. Michael Daragjati*, (unreported) (2011)………..10

- *United States v. Shipp*, 203 U.S. 563(1906)……………………………..…….…10

- *United States v. Thomas,* 13 U.S.C.M.A. 278 (1962)...........................................10

- *Wilhelm v. City of Calumet City*,

- 409 F. Supp. 2d 991, 994 n.1 (N.D. Ill. 2006) ………............……………10

- *Will v. Michigan Department of State Police* (1989)...........................................10

- *Wong Sun v. United States*, 371 U.S. 471 (1963) ………………………..…10

- **<u>STATUTES</u>**

- Federal Rule of Civil Procedure……………………………………………..10

- Federal Rule of Civil Procedure 32 (a)(7)(B) i. …………………………………..10

- Federal Rule of Civil Procedure Rule 8………………………………………...10

- Federal Rule of Civil Procedure Rule 9………………………………………...10

- Federal Rule of Evidence 801.2.D …………………………………………..10

- The Supremacy Clause of the U.S. Const., Article VI, Clause 2………………...10

- **<u>OTHER AUTHORITIES</u>**

- Gladstone, William.   Commentaries on the Laws of England. (1880)...................10

- Holmes, Oliver Wendell (2018).  The Common Law..............................................10

- <u>Pimroy on Equity</u>. Five Volumes (1884)……………………………………12

**Federal Law:**

- U.S. Const. Tenth Amendment……………………………………………………13

CONCLUSION…………………………………………………………………...20

1

2                                    Introduction

3                              "All hands at battle stations."
                                      *Star Trek*

4          As an initial concern, this motion is filed because defendants have stalled in the

5  settlement process, a process that started on December 5th, 2024 to the present – in addition to

6  seeking to replace attorney Labate, and after refusing Judge Furman's generous offer to enter a

7  60-day stay on the case, ECF. No. 140, allowing parties to settle the matter properly; however,

8  defendants decided to have settlement occur while the clock for motion practice runs to their

9  favor; appellant brief is due on March 10th, 2025 and in this court the deadline is March 13th,

10 2025 for responses and answer.

11         defendants deliberately intended to conduct settlement, not with the intention to arrive at

12 a solution but as a form of obfuscation or time wasting, with the most pressured time

13 arrangement for plaintiff. That is why defendants rejected the court's overture to allow a 60-day

14 stay on the matter, ECF No. 142, but preferred to confuse the court into thinking "settlement in

15 principle," did not exist, knowing fully well it did. Compare ECF No. 141, with ECF No. 142;

16 and defendants' private emails. Exhibit: 2-10.

17         Consequently, too preserve plaintiff's rights on the dispute, and obligations on the

18 pending due dates, for both this matter and the appeal, 24-2348 (2nd Cir), this instant motion to

19 enforce the attached settlement, Exhibit: 1, is timely filed:

20                                          *

21         It is generally accepted that bad faith settlement negotiations, intended to affect the

22 litigation posture, results in a binding settlement when the material aspects of the settlement were

23

24

                                            6

agreed upon regardless of the bad faith. Such practices, bad faith settlement negotiations, do not insulate parties from the law of contract.

 "'An exchange of emails may constitute an enforceable agreement if the writings include all of the agreement's essential terms, including the fee, or other cost, involved.'" *Sullivan v. Ruvoldt*, 16 Civ. 583, 2017 WL 1157150 at *6 (S.D.N.Y. Mar. 27, 2017).

Plaintiff requests enforcement of the settlement attached based on parties' clear intent to be bound by the material terms, the finding of a valid contract between parties, entering of a dismissal with prejudice of the matter pursuant to agreement. Exhibit: 1 (settlement agreement)

In Exhibit: 1, the judgment amount was specified with particularity, as was the claim dismissal, and no other terms are ambiguous or left open for further negotiation. See, e.g., *Wilson v. Ledger*, 97 A.D.3d 1028, 1029, 949 N.Y.S.2d 515, 517 (3d Dep't 2012). *Brighton Inv., Ltd. v. Har-Zvi*, 88 A.D.3d 1220, 1222, 932 N.Y.S.2d 214, 216 (3d Dep't 2011)  ("An unsigned contract may be enforceable when objective evidence establishes that the parties intended to be bound, and an exchange of e-mails may constitute an enforceable contract, even if a party subsequently fails to sign implementing documents, when the communications are 'sufficiently clear and concrete' to establish such an intent." (citations omitted)); *Healy v. Gumienny*, 142 A.D.2d 629, 629, 531 N.Y.S.2d 7, 8 (2d Dep't 1988) ("[W]hen all the essential terms and conditions of an agreement have been set forth in informal written memoranda and all that remains is their translation into a more formal document, such an agreement will be capable of specific performance.").

Here, plaintiff makes this request, based on his belief that defendants never intended to consummate any settlement but waste time (both the court's time and plaintiff's time) ( see, ECF

1   No. 141) in regard to the briefing schedule and motions pending. Defendants engaged in this bad

2   faith, at their own peril. However, if plaintiff is wrong, then settlement is what both parties want

3   and defendants actions (timely returning the signed settlement) will vindicate themselves shortly.

4       Plaintiff suspects that defendants want to come back to the table with yet another

5   manufactured impasse. *See*, Exhibit: , after having previously agreed to obtain signatures as the

6   only impediment to docketing the settlement, Exhibit: 3 (Labate email[1]) and Exhibit: 4 (Lin

7   email). Coming back from supposedly obtaining signatures, and offering no additional

8   consideration, with the request for additional clauses is barely fair settlement or good faith; but a

9   manufactured impasse, intended to support defendants' counsel greater objective – bad faith

10  settlement negotiations.

11      However, in abundance of caution, should defendants return their signed settlement

12  portion by February 28th, 2025, plaintiff will docket the finalized settlement, and asks the court

13  to consider this motion withdrawn, as moot.

14                          **Deep Issues**:

15  1.   Should parties' agreed settlement agreement be enforceable under New York law as a

16       valid final settlement binding parties and ending the dispute?

17

18

19

20

21

_____

22  [1] This is a plausible explanation for Labate's wish to withdraw (hot potato exit) from the proceedings – *a fundamental disagreement regrading settlement ethics at Eisner LLP vis-a-vis instructions given to him*. Defendants have refused a zoom conference with any of the defendants present. Exhibit 4. Stating instead that, the conference would be lawyers on one side, and plaintiff on the other. That said, plaintiff is unable to verify whether the terms of

23  the settlement are indeed the wishes of David Ellison or Eisner LLP but has to take their word as officers of the court.

24

## PROCEDURAL POSTURE OF CASE

A. Central District Matter

2:20-CV-08145 -CBM – JCX:

Skydance Development LLC et al, (herein, Defendants) commenced this case by filing the Compliant on September 4th, 2020, pursuant to the Declaratory Judgment 28 U.S.C. §§ 2201-02, in central District as   Plaintiff Skydance Media et al Complaint ¶1.  In the complaint Skydance Media LLC sought to have declared free from copyright infringement their movie, "Gemini Man," released in 2019 and Dr. Sibanda's book: "The Return to Gibraltar," released in August 2011. Skydance Compliant at ¶17.  (ECF No. 1). *Id*.

Plaintiff, Dr. Sibanda, then filed a motion to dismiss plaintiff's complaint. The District Court ordered that prior to dismissing the court it wanted to engage in limited jurisdictional discovery. (ECF No 42. Mr. Sibanda opposed limited jurisdictional discovery on the basis that they were a New Jersey resident, and any sales of books were conducted by a party not sued on the complaint, "Proteus Books." District Court granted Skydance's limited jurisdictional discovery for the purposes of submitting supplemental brief on their opposition to Dr. Sibanda's motion to Dismiss. ECF: 55.

After conducting limited jurisdictional discovery. Including a deposition, in which Skydance Media LLC sought to build a second case against Dr. Sibanda. ECF: 122. During the limited discovery Skydance Media LLC became, for a second time, fully aware of Dr. Sibanda's residency and the fact that he is resident of New Jersey (defendants served Dr. Sibanda in New Jersey). *Id*. In addition, Skydance Media LLC served Dr. Sibanda in New Jersey and have always been aware he is a new Jersey Resident; be it in fact or constructively.

After completing their frivolous and very abusive "limited discovery," and close to a year later from the date of their complaint, Skydance Media LLC plaintiffs, moved to voluntary dismiss their case; without a motion but a mere, one-page, notice. *See*, Skydance's Media LLC's Notice Requesting Voluntary Dismissal: ECF: 91. Dr. Sibanda opposed Skydance's late dismissal and argued that Skydance Media LLC should brief their case. The court, refused, granting Skydance's late Voluntary Dismissals, and no reasonable costs against them: ECF: 99. Essentially, condoning their forum shopping and ignoring Sibanda's rights in a foreign forum.

### B. Southern District of New York

During 1:23-cv-05752 (JMF), plaintiff filed his lawsuit in June 2023. Notable in that case, defendants sought a sanction against plaintiff to the amount of over $25,000, which had to be reduced by this court. ECF: 139. *Id*. That Order is currently under appeal.

### C. 1:24-cv-06310 (JMF)

Regarding 1:24-cv-06310 (JMF), plaintiff refiled his lawsuit in August of 2024, defendants filed their motion to dismiss on November 4th, 2024. ECF: 77. Parties engaged in default judgment motion practice. Plaintiff moved for recusal of the bench, which was denied. ECF: 119. Pending before this court are motions for sanctions by both parties.

## <u>STATEMENT OF FACTS</u>

Parties began settlement negotiation in the first week of December 2024, but  seriously considered settlement on January 31, 2025. Plaintiff submitted a letter stating the principle of settlement had been reached. ECF No. 139, defendants, while making overtures to settle opposed. ECF No 141. The court offered to put in place a 60 day stay, defendants opposed. ECF No. 143.

1    Parties engaged in email correspondence and exchanged offers to settle, ultimately

2    arriving at settlement. Exhibit: <u>1</u>, and awaiting signatures Exhibit: <u>2-8</u>.

3    
> Dr. Sibanda,
> Thank you for your patience as we coordinated with all of our clients. They are **signed**

4    
> **off on the settlement agreement**, with a couple of clean-up changes as reflected in the
> attached redline. If you are okay with the changes, please let us know and we will

5    
> circulate for all signatures using the attached execution version.
> Best,

6    
> Angelo

7    
> Exhibit No. <u>2</u>.

8

9    On February 19th, 2025, Plaintiff submitted a status letter, agreed and approved by

10   defendant counsel, Labate, stating that parties were awaiting signatures only:

11   
> Honorable Judge Jesse M. Furman,
> Parties have reached settlement and require an additional two weeks to secure signatures

12   
> of respective defendants memorialized on settlement document.
> Plaintiff requests an additional two-week, adjustment of deadlines on due dates.

13   
> Defendants do not oppose this request and join the request.

14   
> ECF. No. <u>145</u>

15   This joint status letter was based on the direct approval of Labate who stated in an email

16   to plaintiff:

17   
> Dr. Sibanda – Thank you for your email. Defendants consent to the relief requested in the
> letter and consent to you filing the letter with the notation regarding their joining the

18   
> request.
> Thank you,

19   
> Angelo                                      Exhibit No. <u>6</u>
>                                             (dated February 19th, 2025)

20

21   On Friday, February 21, 2025, attorney Labate filed a motion to withdraw from matter.

22   EF No. <u>147</u>. Plaintiff opposed. ECF No. <u>148-149</u>. And requested oral argument, ECF No. <u>150</u>.

23

24

Plaintiff files this instant motion-to-enforce settlement, contemporaneous with defendants' motion to withdraw, as both motions are related (defendants' counsel's motion to withdraw and defendants' settlement stalemate).

Attorney Lin, has also stated that she intends to return a signed agreement:

> Okay. I will circulate for signatures now. It may take longer to obtain original signatures[2] from everyone, but I will work on it.
> Thank you,
> Ashlee

Exhibit No. 9:

Plaintiff moves to have ethe court effectuate the agreement as valid and binding and to have the matter dismissed with prejudice, ending the perennial requests for extensions of time and wasting of the court's time.

## **Legal Standard**

It is black letter law in the Second Circuit that "[s]ettlement agreements are contracts and must therefore be construed according to general principles of contract law." Red Ball Interior Demolition Corp. v. Palmadessa, 173 F.3d 481, 484 (2d Cir. 1999); accord, e.g., Lenington v. Kachkar, 633 F. App'x 59, 60 (2d Cir. 2016); Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., No. 04-3528, 2005 WL 1076552 at *1 (2d Cir. May 6, 2005); Loreley Fin. No. 3 Ltd. v. Wells Fargo Sec., LLC, 12 Civ. 3723, 2017 WL 985875 at *6 (S.D.N.Y. Mar. 10, 2017); Dash v. Bd. of Educ. of CitySch. Dist. of N.Y., No. 15-CV-2013, --- F. Supp. 3d        , 2017 WL 838226 at *5 (E.D.N.Y. Mar. 3, 2017) (Weinstein, D.J.); Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC, 04 Civ. 1621, 2005 WL 1377853 at *4 (S.D.N.Y. June 9, 2005) (Peck, M.J.) (citing cases).

---

[2] Plaintiff is also concerned as to whether the signatures "obtained" by defendant counsel Lin in the final document will be authentic or not, another reason why this instant motion is filed. Ms. Lin, seemed to suggest using the electronic tool  "DocuSign" to sign the agreement. See, Exhibit: No. 10. This would essentially mean, Eisner LLP, signs, through DocuSign, on behalf of all defendants with no authentication possible from opposing party to verify the signatures.

"'To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound.'" *Register.Com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004); see also, e.g., Doe v. Kogut, 15 Civ. 7726, 2017 WL 1287144 at *4 (S.D.N.Y. Apr. 6, 2017) ("The lynchpin of any settlement agreement is the mutual assent of parties to the terms of the settlement."); Rightnour v. Tiffany & Co., 16 Civ. 3527, --- F. Supp. 3d, 2017 WL 878448 at *5 (S.D.N.Y. Mar. 6, 2017); *In re SinoHub, Inc. Sec. Litig.,* 12 Civ. 8478, 2015 WL 3792625 at *1 (S.D.N.Y. June 3, 2015); *Hostcentric Techs., Inc. v. Republic Thunderbolt*, LLC, 2005 WL 1377853 at *4 (& cases cited therein).

"[O]nce reached, a settlement agreement constitutes a contract that is binding and conclusive and the parties are bound to the terms of the contract even if a party has a change of heart between the time of the agreement to the terms of the settlement and the time it is reduced to writing." *Macdonald v. Dragone Classic Motor Cars*, 95 Civ. 499, 2003 WL 22056626 at *6 (D. Conn. Apr. 29, 2003); accord, e.g., *Sher v. Bonocci*, No. 13-CV-6168, 2017 WL 64766 at *3 (W.D.N.Y. Jan. 6, 2017); *McLeod v. Post Graduate Ctr. for Mental Health*, 14 Civ. 10041, 2016 WL 6126014 at *3 (S.D.N.Y. Sept. 30, 2016), R. & R. adopted, 2016 WL 6126383 (S.D.N.Y. Oct. 19, 2016).

Moreover, "'[a] district court has the power to enforce summarily on motion, a settlement agreement reached in a case that was pending before it.'" *BCM Dev., LLC v. Oprandy*, 490 F. App'x 409, 409 (2d Cir. 2013); accord, e.g., *Goldstein v. Solucorp Indus., Ltd.*, 11 Civ. 6227, 5 2017 WL 1078739 at *4 (S.D.N.Y. Feb. 10, 2017), R. & R. adopted, 2017 WL 1067792 (S.D.N.Y. Mar. 21, 2017); *Grgurev v. Licul*, 15 Civ. 9805, 2016 WL 6652741 at *3 (S.D.N.Y. Nov. 10, 2016). 490 F. App'x 409, 409 (2d Cir. 2013); accord, e.g., *Goldstein v. Solucorp Indus.*, Ltd., 11 Civ. 6227, 5 2017 WL 1078739 at *4 (S.D.N.Y. Feb. 10, 2017), R. & R. adopted, 2017

WL 1067792 (S.D.N.Y. Mar. 21, 2017); *Grgurev v. Licul*, 15 Civ. 9805, 2016 WL 6652741 at *3

(S.D.N.Y. Nov. 10, 2016).

1

2

3

4

## **ARGUMENT**

i.    **Parties Have A Valid Legal Contract and The Court Should Enforce It, Ending This Dispute**

5

6

7

Any term in dispute is merely a linguistic correction but does not undercut the meeting of minds here. Although defendant characterizes these terms as being 'essential' to the contract, in reality they are simply additional terms that, in hindsight, it wishes it had bargained for."); *Estate of Brannon v. City of N.Y.*, 14 Civ. 2849, 2016 WL 1047078 at *3 (S.D.N.Y. Mar. 10, 2016) (noting plaintiff had not "pointed to any legal authority indicating that the hypothetical possibility of future claims make the extent of a release a material term").

8

9

10

11

12

13

Enforcement of the agreement is supported by the four factors set forth in *Winston v. Mediafare Entm't Corp.,* 777 F.2d 78, 80 (2d Cir. 1985), "that help determine whether the parties intended to be bound in the absence of a document executed by both sides":

14

15

(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract;
(3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

16

17

*Winston* Factors:

18

19

20

21

22

The **first factor** "is the most important." *Hostcentric Techs., Inc. v. Republic Thunderbolt*, LLC, 04 Civ. 1621, 2005 WL 1377853 at *7 (S.D.N.Y. June 9, 2005) (Peck, M.J.); accord, e.g., *Goldstein v. Solucorp Indus., Ltd.,* 11 Civ. 6227, 2017 WL 1078739 at *6 (S.D.N.Y. Feb. 10, 2017) ("This is the most heavily weighed Winston factor.    [C]ourts have frequently found the absence of such a reservation to weigh in favor of enforcing a settlement."), R. & R.

23

24

adopted, 2017 WL 1067792 (S.D.N.Y. Mar. 21, 2017). There was no express or implied reservation by either party of the right not to be bound absent a signed writing. Dr. Sibanda made an offer, Skydance parties responded with a counteroffer, and Dr. Sibanda accepted that counteroffer. Exhibits: 2-8. "The . . . emails [ and attachments]constitute a classic offer and acceptance, contain all the terms of the agreement, and evidence the intent that the" parties "ha[d] a deal." *Hostcentric Techs., Inc. v. Republic Thunderbolt*, LLC, 2005 WL 1377853 at *7; see page 2 above. This factor favors Dr. Sibanda.

As to the **second factor**, there is partial performance since Dr. Sibanda has not filed any pleadings operative to the main case and due dates have been reset; accordingly, Dr. Sibanda has withheld his hand during litigation to effectuate the promises of the settlement and in good faith. See, e.g., *Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC*, 2005 WL 1377853 at *8. 10 went unaddressed. See, e.g., Doe v. Kogut, 15 Civ. 7726, 2017 WL 1287144 at *7 (S.D.N.Y. Apr. 6, 2017). This factor is in Dr. Sibanda's corner.

The **third Winston factor** examines whether the parties agreed on all material terms: *Grgurev v. Licul*, 15 Civ. 9805, 2016 WL 6652741 at *6 (S.D.N.Y. Nov. 10, 2016) ("[C]ourts analyzing this factor focus on whether the parties reached agreement with respect to all material terms."); *Estate of Brannon v. City of N.Y.*, 14 Civ. 2849, 2016 WL 1047078 at *3 (S.D.N.Y. Mar. 10, 2016) ("The Second Circuit has clarified that the third Winston factor should evaluate whether the parties have agreed 'on all material terms.'" (quoting *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 325 (2d Cir. 1997))).

The third factor, whether all material terms had been agreed to, favors Dr. Sibanda. The parties agreed to settle, for an agreed sum, and dismiss both this matter and the appeal, with prejudice. This is uncontroverted.

1

2      The **fourth factor**, whether the agreement at issue is the type of contract that is usually

3 committed to writing, also favours Dr. Sibanda. The inquiry "is whether the settlement

4 agreement terms are sufficiently complex or involve long time periods, such that there should be

5 a formal writing." *Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC*, 2005 WL 1377853 at

6 *9 (citing cases); accord, e.g., *Grgurev v. Licul*, 2016 WL 6652741 at *7; *Estate of Brannon v.

7 City of N.Y.,* 2016 WL 1047078 at *3. "Courts evaluate complexity by considering '(1) the

8 amount of money at issue, (2) whether the terms of agreement will carry into perpetuity, and (3)

9 the length and complexity of the agreement itself.'" *Grgurev v. Licul*, 2016 WL 6652741 at *7.

10      The instant settlement agreement is not complex. The parties agreed on a zero dollar sum to

11 be entered as a judgment against Skydance Parties. (*Supra*). Thus, there were no complex

12 payment arrangements or any required post-judgment obligations on either side. (See id.) The

13 parties' obligation to satisfy the agreed-upon terms (settlement and dismissal of Dr. Sibanda 's

14 claims) terminates on entry of the boilerplate judgment. No formal writing cluase was required to

15 memorialize these terms.

16      In sum, the parties have not expressly reserved the right not to be bound in the absence of

17 writing (Exhibit No. 1); partial performance has occurred from both the plaintiff and the court's

18 subjective reliance position; all the material terms of the agreement have been agreed upon

19 (Exhibit No. 2-10); and the settlement has been committed to writing (Exhibit No: 1).

20 Accordingly, four Winston factors, favor the finding of a valid settlement agreement: and

21 entering an order dismissing the matter, is supported by the facts.

22      **II. The Court Should Hold The Perpetuity Clause As Affirmed By Either Party, Not As
An Obstacle To Settlement**

23

24

Aside from the four factor *Winston* test in plaintiff's favor, Plaintiff does not have an issue with the <u>mutual perpetuity clause</u>, last section of 3.a and 3.b, (Exhibit: <u>1</u>), even thought it was submitted by defendants as a revision at the 11th hour, and any impression that it is the basis of an impasse between parties, is self-made puffery designed to rig the litigation in defendants' favor: by cancelling the agreed material settlement. *See*, Exhibit: <u>11</u>, email from Ms. Lin, stating: "thank you, parties are at an impasse[3]." A manufactured impasse designed to relitigate the matter in an advantageous manner against plaintiff's time constraints.

Not withstanidng, the attached settlement agreement survives any accusation that the material terms crucial to the agreement have no meeting of minds based on any clerical errors; spelling, grammatic and linguistic clean-ups because the materiality and meeting of minds that is self-evident though the exchange of emails. *See*, Exhibit: <u>2-10,</u> support a valid contract. "'An exchange of emails may constitute an enforceable agreement if the writings include all of the agreement's essential terms, including the fee, or other cost, involved.'" *Sullivan v. Ruvoldt*, 16 Civ. 583, 2017 WL 1157150 at *6 (S.D.N.Y. Mar. 27, 2017).

Here, the court has an agreement, agreed upon by all parties, only awaiting signatures. Exhibit No. <u>1</u>. Parties manifested their mutual understanding and acceptance to be bound through emails, in plain language and affirmatively so in an executable final agreement. Exhibit No. <u>1-10</u>.

Furthermore, this executable settlement agreement was primarily adopted from defendants' own originating draft and bares Eisner LLP's internal markers.

### III. Parties and the Court Are Better Served By Addressing The Settlement's Finality Under The Law of The Case Doctrine

---

[3] Refuted directly by other emails exchanged later than evening, see Exhibits: <u>3-10</u>, for time stamps.

This court is now aware of the nature of this dispute, its acrimonious history and the issues, accordingly, the court's intervention would be justified outside of the fact that the settlement passes muster as a contract under the New York law cited here. Parties have both agreed to retain the court's enforcement and use of New York law as the substantive law; in addition, the parties have agreed to severe any clause and retain the rest of the agreement as enforceable. *See*, Exhibit 1, at 17 and 16. Stated plainly, it is parties mutual will, that this court play a role in the life of this settlement. This is unequivocal. *Id. at 17.*

On the other hand, throughout the history of this dispute - Defendants have battled with issues of incivility towards plaintiff, and even though the finish line is close, this court's intervention would be justified because defendants have agreed that the only impediment to the final settlement are defendants' signatures. Exhibit No. 1 and 11. This court taking its time to address enforcement of the settlement to stop defendants' time wasting is justified by their prior conduct. *See*, ECF No. 128 (1:23-cv-05752 (JMF) (refusing to return initial overtures to settle in the life of this dispute or length reply times).

Accordingly, the court's adjudication will not force parties to an agreement they never agreed to, but assures this matter is concluded fairly – plaintiff having entered settlement with good faith and defendants not taking advantage of the proceedings due dates. Any last minute, reneging or additional terms, unsupported by consideration, is nothing but gamesmanship by defendants, designed to create the illusion the settlement is not final: *manufactured impasse.*

The court may well use its inherent power to police its docket here, regarding, making sure defendants understand that their antics do not go unnoticed pursuant to 28 U.S.C. § 1927[4].

Under 28 U.S.C. § 1927, a court may require any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Such an award can only be applied to counsel and moreover is proper "only 'when there is a finding of conduct constituting or akin to bad faith.'" *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 591 (2d Cir. 2016). Here, defendants' settlement negotiation is rebuttably based on bad faith ( until they show this court otherwise): the pretension that settlement is imminent to plaintiff or that settlement in principle does not exist and the court need not afford a window for parties to find each other; only to manufacture a settlement impasse, at the 11th hour, with no flexibility – is the classic definition of bad faith settlement tactics, that should not go unnoticed by the bench.

Conclusion

Plaintiff respectfully requests that this motion be granted with costs, as the settlement agreement provides, Section: 10[5], (Exhibit: 1) and schedule the matter for a stipulated dismissal, per parties agreed wishes.

---

[4] In the same way plaintiff was told that Rule 11 sanctions would deter his future conduct by this court. The law-of-the case requires that both plaintiff and defendant be held to the same deterrence standard when bad faith is implicated.

[5] Section10:

    Prevailing Party in Future Dispute. In the event of a dispute relating to the terms or **enforcement of this Agreement**, the prevailing Party shall be entitled to payment of their attorneys' fees and costs from the opposing Party. (Exhibit: 1).

Furthermore, plaintiff asks that any costs *also* be levied directly on Eisner LLP[6], not defendants, under a 28 U.S.C. § 1927 analysis. And for any *just and proper* remedy the court deems fit.

However, should defendants rebut what is asserted here and return their portion of the signed settlement agreement by February 28th, 2025, plaintiff intends docketing the fully signed agreement and respectfully requests that the court withdraw this instant motion-for-settlement-enforcement, as moot.

Dated: 2/24/2025                                                Washington, DC

By:

_Signature_
Signature

DR. KISSINGER N. SIBANDAESQ
LL. B (Hons); LL.M (State / Trial); LL.M (Federal/ Trial); SJD.
Admitted: United States Supreme Court

---

[6] *See also*, *Rhonda Levy v. Eisner LLP*, 1:04-cv-00398-KMW-MHD.